TOMASA DÁVILA PADRÓ, demandante y apelante *v.* AMPARO CÓRDOVA DÁVILA y otros, demandados y apelados.

Número 10559.
*Sometido:* 2 de febrero de 1953. *Resuelto:* 20 de septiembre de 1954.

*Isaías Rodríguez Moreno,* abogado de la apelante; *José R. Fournier,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata de un recurso de sentencia declaratoria, donde la demandante y apelante alega ser dueña de una casa con solar, situada en la calle de las Flores del pueblo de Cataño, Puerto Rico, que adquirió por compra de don Jacinto Lasalle

el día 6 de marzo de 1912, habiendo entrado en inmediata posesión y disfrute de dicha propiedad, en carácter de única dueña desde la fecha de su adquisición, a pesar de que dicho inmueble aparece inscrito en el Registro de la Propiedad de Bayamón, a favor de don Ramón Córdova Díaz, quien fué la persona que compareció al otorgamiento de la escritura para adquirir dicha propiedad, pero que lo hizo para exclusivo beneficio de la aquí demandante y apelante, por haber sido dicha demandante y apelante quien pagó de su propio peculio el precio de venta; que en el título adquisitivo de dicha propiedad se hizo figurar dicha casa y solar como una pertenencia del finado don Ramón Córdova Díaz, pero bajo condición verbal expresa por parte de éste, de traspasar el título de propiedad a favor de la aquí demandante y apelante, tan pronto como ella así lo requiriera de dicho don Ramón Córdova Díaz; que la demandante y apelante ha requerido a los herederos de don Ramón Córdova Díaz aquí demandados, para que le traspasen el título de propiedad de su casa y solar, y éstos se han negado, y la administradora judicial de la herencia, ha anunciado la venta en subasta pública de la propiedad de la demandante y apelante, para venderla el día 27 de febrero de 1948, por lo cual, la demandante y apelante solicitó del tribunal de primera instancia, dictara sentencia declarando que la demandante y apelante es la única dueña del inmueble, y ordenando la correspondiente cancelación en el Registro de la Propiedad, de la inscripción a favor del finado don Ramón Córdova Díaz.

Contestaron los demandados alegando que la demanda no aducía hechos suficientes para constituir una justa y meritoria causa de acción en contra de los demandados, y que la propiedad objeto de la demanda pertenece a la Sucesión de Elena Agapita Dávila y Ramón Córdova Díaz y que nunca ha sido propiedad de la demandante ni lo es en la actualidad. Durante la vista del caso, la demandante y apelante anunció y procedió a ofrecer la prueba pertinente, sin ninguna objeción de la otra parte, que iba a presentar su caso, no sólo

bajo la teoría del posible incumplimiento de contrato sino también bajo la teoría de la prescripción adquisitiva. El tribunal, sosteniendo una objeción de los demandados, no permitió que la demandante y apelante declarara sobre algunos extremos del pacto verbal celebrado entre ella y don Ramón Córdova Díaz por referirse a manifestaciones de un finado, y el caso continuó bajo la segunda teoría establecida, o sea, la de la prescripción adquisitiva.

Después de la celebración del juicio, la ilustrada sala sentenciadora de Bayamón formuló las siguientes conclusiones de hecho y de derecho:

"Exposición de Hechos Probados

"1. La demandante nunca ha sido ni es dueña de la finca que ha motivado este litigio.

"2. Ramón Córdova Díaz y su esposa doña Elena Agapita Dávila compraron el inmueble objeto de este pleito y pagaron por el mismo y a su nombre fué inscrito en el Registro de la Propiedad.

"3. El hecho de haber vivido y vivir la demandante en el inmueble no ha significado nunca que ella fuera la dueña del mismo.

"Conclusiones de Derecho

"1. No habiendo establecido la parte demandante las alegaciones consignadas en su demanda, no tiene derecho a lo que en ella solicita, por lo que, no se puede dictar sentencia en su favor consignando que la demandante es la dueña de la casa descrita en su demanda."

En armonía con sus conclusiones de hecho y de derecho, el tribunal dictó sentencia declarando sin lugar la demanda, con las costas a cargo de la parte demandante, incluyendo la suma de cien dólares para los honorarios del abogado de la parte demandada.

Notamos que el ilustrado juez sentenciador no hizo conclusión específica alguna, en cuanto a si la posesión de la demandante y apelante, era o no suficiente para establecer un derecho de dominio por prescripción extraordinaria en favor de dicha demandante y apelante, según se lo indicamos en nuestra sentencia de 29 de mayo de 1952, devolviendo el

caso para que por él se diera cumplimiento a la Regla 52 (a) de las Reglas de Enjuiciamiento Civil de Puerto Rico. Es difícil que la conclusión de hecho 3 que dice: "el hecho de haber vivido y vivir la demandante en el inmueble no ha significado nunca que ella fuera la dueña del mismo", podamos considerarla como una conclusión sobre la verdadera cuestión litigiosa en este asunto, que es la creación de un derecho de dominio por prescripción extraordinaria, pues no dice cuánto tiempo ha vivido la demandante y apelante en la casa, objeto de este procedimiento, cuándo entró en posesión de dicha casa y en qué concepto, y qué clase de posesión ha sido la de la demandante y apelante. Teniendo nosotros facultad para dejar sin efecto la conclusión de la ilustrada sala sentenciadora, en el sentido, que el hecho de haber vivido la demandante en el inmueble, si lo hizo en concepto público de dueña, es suficiente para crear derechos a favor de la demandante y apelante, por ser la conclusión claramente errónea, de acuerdo con los hechos, (Regla 52 (a)) y la ley aplicable a dichos hechos, examinaremos, primero, la cuestión de derecho, para ver qué clase de prueba es la que requiere la prescripción extraordinaria, y, segundo, las cuestiones de hechos, para determinar si los mismos son suficientes, para que el derecho de dominio por prescripción extraordinaria que pretende haber probado la demandante y apelante, pueda ser así declarado.

◼ El art. 1859 del Código Civil de Puerto Rico dispone que "se prescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes, salvo la excepción determinada en el artículo 475, segunda sección, capítulo I, título VII, libro segundo de este Código", o sea, con excepción de las servidumbres continuas no aparentes y las discontinuas, sean o no aparentes, que sólo podrán adquirirse en virtud de título, y por lo tanto, no son prescribibles. De acuerdo con Manresa, "el precepto que examinamos debe entenderse en relación con el artículo 447 [art. 376 de nuestro

Código] y por tanto, la posesión a que se refiere, y la que es susceptible de producir el dominio por la prescripción extraordinaria, ha de ser tenida en concepto de dueño, porque según dicho artículo sólo la adquirida y disfrutada en dicho concepto, es la única que puede servir de título para adquirir el dominio. Así es que el colono, el comodatario, el apoderado, y, en general, todos los que poseen en nombre o en representación de otro no pueden adquirir el dominio de lo poseído por ellos ni ningún otro derecho, por virtud de prescripción, no ya ordinaria, sino ni aun por la extraordinaria, por largo que sea el tiempo que estuvieren en posesión de ello, puesto que no poseen en concepto de dueño. El Tribunal Supremo [se refiere al Tribunal Supremo de España] confirma esta doctrina declarando qué al exigir el artículo 1959 del Código [1859 nuestro] como condición única para la prescripción extraordinaria la posesión no interrumpida durante treinta años, no se refiere a la posesión material de la cosa, sino a la posesión en concepto de dueño, como se deduce de los artículos 444, 447 y 1941 (S. 19 de noviembre de 1910)." 12 Manresa—Comentarios al Código Civil Español 906 y 907, (quinta ed. revisada del Instituto Editorial Reus), (1951). (Corchetes nuestros.). Los arts. 444, 447 y 1941 del Código Civil Español concuerdan exactamente con los arts. 373, 376 y 1841 del Código Civil de Puerto Rico.

Lo que constituye una posesión "en concepto de dueño", debemos pues esclarecerla, examinando en conjunto las disposiciones de los arts. 373, 376 y 1841 de nuestro Código. El art. 373 dispone que "los actos meramente tolerados y los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa, o con violencia, no afectan a la posesión" y por lo tanto, no cuentan para la prescripción extraordinaria por la posesión no interrumpida durante treinta años.

Para el estudio de este caso bastará con que examinemos el primer concepto, "los actos meramente tolerados", o sea, la mera tolerancia. Al comentar el art. 444, del Código Civil Español, equivalente como hemos visto al art. 373 nuestro,

dice Manresa: "extraña e innecesaria parece a primera vista la palabra 'meramente' empleada en el artículo 444; pero la materia es delicada y el Código no podía dejar expedito un recurso al poseedor para afirmar en todo caso que sólo por tolerancia suya se realizaban por un tercero actos posesorios que no podían en modo alguno afectar a su posesión. Tiene, pues, a nuestro entender, por objeto ese adverbio limitar el alcance de la palabra *tolerar*. Tolerar es sufrir, consentir tácitamente, ver con indiferencia actos no lícitos ni conformes con la voluntad del que los presencia, o sabe y no los contradice. Todo podría considerarse tolerancia y de aquí el peligro de este término. No bastaría, ciertamente, que se hablase de actos meramente tolerados, si no hubiese en el Código otro artículo que explica el verdadero sentido de la frase. No aprovechan para la posesión, dice el art. 1942 [art. 1842 de nuestro Código] los actos de carácter posesorio ejecutados en virtud de *licencia o por mera tolerancia* del dueño. ¿Separa la ley en el art. 1942 la licencia de la mera tolerancia o considera ambos términos como sinónimos? Entre este artículo cuya doctrina se completa con la del 1941 [art. 1841 de nuestro Código que dice: la posesión ha de ser en concepto de dueño, pública, pacífica y no interrumpida] y el 444 [art. 373 nuestro] que nos ocupa, no hay más diferencia que la de aplicarse una misma idea a distintos objetos o a diferente fin. Aquéllos se refieren a la posesión que conduce a la prescripción, y aluden por lo tanto a la tolerancia, falta de conocimiento y oposición por parte del *dueño*. El 444 [373 nuestro] se refiere a toda posesión tolerada, ignorada o rechazada por cualquier *poseedor*, sea o no dueño. Esto no obstante, la idea es la misma. El art. 444 [373 nuestro] forma la regla general, los 1941 y 1942 [1841 y 1942 nuestros] constituyen una de sus más importantes y legítimas aplicaciones. De notar es que lo mismo el art. 444 [373 nuestro] que el artículo 1942 [1842 nuestro] hablan de *mera* tolerancia, como si quisieran separar la tolerancia de la mera tolerancia, o *como si no fuese lo mismo una cosa que otra*. Además el 444 [373

nuestro] no añade a los actos meramente tolerados los ejecutados en virtud de licencia o permiso. De aquí deducimos que, en efecto, la ley no se quiere referir a toda tolerancia del dueño o poseedor, sino sólo a la mera tolerancia, *y como tal considera, la autorización, permiso o licencia en virtud de la cual se realizan o practican actos posesorios.* De este modo la cuestión es más sencilla, *pues se traduce en la existencia o no existencia del permiso.* De no ser así, la cuestión sería de apreciación muy dudosa y expuesta a peligros, porque nunca el dueño dejaría de alegar que hubo solo tolerancia por su parte. Difícil es, en efecto, trazar la línea divisoria entre la tolerancia del dueño y el abandono de su derecho cuando los actos del tenedor se repiten, y mucho más cuando el tiempo va afirmando y consolidando una relación que puede dudarse si era o no legítima en su origen. Cuando media licencia o permiso la prueba es más fácil. A los Jueces y Tribunales corresponderá apreciar en cada caso cuándo existe mera tolerancia y cuándo verdadero abandono del derecho por parte del dueño": 4 Manresa—Comentarios al Código Civil Español, 170 y 171, (quinta ed. corregida y aumentada de la Editorial Reus), (1951). (Corchetes nuestros.)

El primer principio que debemos dejar establecido es que nunca se considerará como una posesión en concepto de dueño, a los efectos de la prescripción extraordinaria, aquella posesión que se derive de la autorización, permiso o licencia concedida por el dueño, pero sí se considerará como una posesión en concepto de dueño, a los efectos de la prescripción extraordinaria, aquella posesión que se derive de la tolerancia del dueño, pues tal tolerancia, como algo distinto a la mera tolerancia, se convierte en realidad de verdad y de derecho, en el abandono de un derecho por parte del dueño, y el fin social que persigue la prescripción, es, que no haya derechos abandonados que puedan afectar al crédito territorial, a la productividad, o al orden jurídico de la propiedad nacional.

El art. 376 de nuestro Código Civil dispone que: "sólo la posesión que se adquiere y se disfruta en concepto de dueño

puede servir de título para adquirir el dominio." Su concordancia con la prescripción extraordinaria aparece claramente de la siguiente glosa de Manresa: "se ha afirmado que el Código al tratar de la posesión se olvida de uno de sus más importantes efectos: la prescripción. Esto no es verdad, como lo prueba el art. 447; [376 nuestro] pero lo más raro es que los mismos que sientan la anterior afirmación critican luego el art. 447 [376 nuestro] por ser propio de la materia de prescripción. El Código se limita a sentar un principio cuyo desenvolvimiento se encuentra en los artículos 1930 al 1960 [1830 al 1860 del Código Civil nuestro, referentes a las disposiciones generales de la prescripción y a la prescripción del dominio y demás derechos reales] uno de los efectos posibles de la posesión es la prescripción a que sólo puede aspirar el poseedor en concepto de dueño:" 4 Manresa 213 y 214, (obra y ed. citadas). (Corchetes nuestros.)

Para el estudio de la cuestión litigiosa que nos ocupa, bastará con que examinemos, qué se entiende por la frase "en concepto de dueño" en la institución de derecho civil de la posesión. Esto nos remite a la disposición general del art. 362 del Código Civil de Puerto Rico, equivalente al art. 432 del Código Civil Español, que dispone: "la posesión en los bienes, y derechos, puede tenerse en uno de dos aspectos: o en el de dueño, o en el de tenedor de las cosas o derechos para conservarlos o disfrutarlos perteneciendo el dominio a otra persona". Notamos que en la redacción del artículo puertorriqueño, en vez de seguirse estrictamente la redacción española, que dice: "puede tenerse en uno de dos conceptos", se varió para que diga que "puede tenerse en uno de dos aspectos", pero no le damos mayor importancia a la variación, no sólo porque el cambio es puramente de forma y no altera el contenido, sino porque en el resto de los artículos relacionados con el 362, se mantuvo la redacción española de "en concepto de dueño." Relacionando el art. 447 [376 nuestro] que dispone: "sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para ad-

quirir el dominio", con el art. 432 bajo estudio, [362 nuestro], dice Manresa: "Confesamos que después de la generalidad del art. 430, [360 nuestro, que dispone: 'posesión natural es la tenencia de una cosa o el disfrute de un derecho por una persona; posesión civil es esa misma tenencia o disfrute unidos a la intención de haber la cosa o derecho como suyos'] no nos desagradaría esa distinción, que equivaldría a separar el derecho de poseer en el dueño, del derecho de posesión en otra persona cualquiera; derecho este último de mero ejercicio, sin derecho fundamental en que apoyarse; pero no es esa la idea del art. 432, [362 nuestro] lo cual se prueba fácilmente sin más que leer el artículo 447: [376 nuestro]. 'Sólo la posesión que se adquiere y se disfruta en *concepto de dueño* puede servir de título para adquirir el *dominio.*' Si la posesión en concepto de dueño es la única que puede servir de título para adquirir el dominio, es claro que el que posee en concepto de dueño *no es el dueño mismo, sino uno que aspira o puede llegar a serlo.*" 4 Manresa 79 (obra y ed. citadas) . . . . Sigue Manresa: "El concepto debe ser formado fuera de la voluntad del poseedor, y aparte de la situación especial de ánimo de éste. El que pretende ser dueño, crea o no que lo es, como dueño se conduce, actos de dueño realiza, y como dueño es considerado o puede ser considerado por todos los que presencian la relación o el ejercicio de su derecho. Concepto es opinión, juicio que se forma de alguna cosa; en concepto de dueño equivale a en opinión de dueño; pero no en opinión propia, sino en opinión ajena, en opinión o juicio formado por los demás. Concepto es idea que forma el entendimiento en virtud de los actos o de los hechos que presencia o conoce. Concepto es también creencia, pero no del poseedor, sino de los que no sean él . . . . En un pueblo o en una región se sabe a quién pertenece cada finca; lo saben los propietarios más próximos, y por ellos los más remotos y cuantos tengan interés en averiguarlo; lo saben los padres y por ellos los hijos; saben que tal huerta es de tal marqués, y que Pedro es su arrendador, o su administrador

o su guarda; saben que Juan ha vendido a Luis tales terrenos, o que a la muerte de Antonio, su viuda, o sus hijos, o sus hermanos, han heredado sus bienes; saben que existe tal pleito y se ha constituído tal depósito o administración; ven que A usa el caballo de B; que por tal dehesa hay una servidumbre de paso; que las aguas de un corral vierten en otro distinto; saben que C paga cierto canon al Ayuntamiento o a un particular; que D ha hipotecado sus tierras; que G es prestamista y le son deudores F y H; que L es mulero de S, o T mayoral de tal empresa de coches, etc. Esta opinión o esta creencia pública no nace solamente de una apariencia; nace de lo que se conoce y sabe, además de lo que se ve y observa. Es una creencia bien fundada, aunque puede ser errónea, lo cual nada tiene de extraño, puesto que el mismo poseedor se equivoca. Es un estado de ánimo de los terceros, de la masa general de la sociedad correspondiente al estado de ánimo del poseedor; *es la buena fe*, digámoslo así, *de todos los que no son el poseedor mismo*": 4 Manresa 81 y 82 (obra y ed. citadas). Sigue comentando Manresa: "Por lo demás, el precepto del art. 432 [362 nuestro] no puede tacharse, como alguien quiere, de superfluo; no es una de las muchas abstracciones que se incluyen en los Códigos, más bien por rendir tributo a los mandamientos doctrinales, que por imperio de las exigencias positivas; es precisamente la base de toda la doctrina relativa a la adquisición del dominio de las cosas y de los derechos por prescripción; adquisición que si de un lado exige *a veces* en el poseedor la *creencia* de ser propietario, de otro exige *siempre* que la posesión *sea en concepto de dueño*, no atendiendo para ello a un estado especial de ánimo del poseedor, sino a la opinión pública, a la creencia general formada en vista de las circunstancias que preceden y acompañan a cada posesión." 4 Manresa 83 (obra y ed. citadas). (Corchetes nuestros.)

Obsérvese lo cuidadosamente que Manresa deslinda el elemento de buena fe pública, en la disposición que establece la posesión "en concepto de dueño" para la prescripción ex-

traordinaria, ya que el art. 1850 de nuestro Código Civil dispone la prescripción por "la posesión no interrumpida durante treinta años, sin necesidad de título ni de *buena fe*," y el elemento de buena fe privada en la creencia del poseedor de buena fe, para la prescripción ordinaria, ya que el art. 1850 de nuestro Código Civil dispone que "*la buena fe* del poseedor consiste en la *creencia* de que la persona de quien recibió la cosa era dueña de ella y podía transmitir el dominio" y el art. 1857 de nuestro Código Civil que dispone: "el dominio y los demás derechos reales sobre bienes muebles se prescriben por la posesión continua durante diez años entre presentes y veinte entre ausentes, con *buena fe* y justo título", o sea, la exterioridad de la creencia pública, en el caso del "concepto de dueño" de la prescripción extraordinaria, contrapuesta a la interioridad de la creencia subjetiva, en el caso de la buena fe del poseedor de la prescripción ordinaria.

El segundo principio que debemos dejar establecido es que siempre se considerará como una *posesión en concepto de dueño*, a los efectos de la prescripción extraordinaria, la posesión atribuída al poseedor por la creencia pública y general, en el sentido, que el poseedor es dueño de la cosa poseída, independientemente de la creencia que sobre el particular pueda tener el propio poseedor.

El art. 1841, establece que para los efectos de cualquiera prescripción, tanto la ordinaria como la extraordinaria, "la posesión ha de ser en concepto de dueño, pública, pacífica y no interrumpida". Comentando el art. 1941 del Código Civil Español, equivalente a nuestro art. 1841, dice Manresa: "esa exigencia [se refiere a la posesión en concepto de dueño] de la ley la tenemos explicada y justificada ya en el comentario del citado artículo; [se refiere al art. 447 del Código Civil español equivalente al 376 nuestro, que establece que 'solo la posesión que se adquiere y disfruta en concepto de dueño, puede servir de título para adquirir el dominio'] pero además es de tan buen sentido jurídico que no necesita demostración alguna de la necesidad de la misma, toda vez que la posesión

del arrendatario, del depositario, del comodatario y de todas las demás personas que poseen en nombre o representación de otro, no puede servir para fundar en ella la prescripción, porque dichas personas no poseen para sí, sino para otro, y falta en tal posesión el *animus domini*, elemento preciso para adquirir la propiedad." 12 Manresa 825 (obra y ed. citadas). (Corchetes nuestros.) En igual condición se encuentra el mero tenedor, el usufructuario, el usuario, el anticresista, añadimos nosotros.

En cuanto al elemento de publicidad, sigue comentando Manresa: "Otra de las condiciones que ha de tener la posesión para que pueda producir la prescripción es la de que sea pública, y tan justificada se halla su exigencia como la de la anterior, pues si fuere oculta no podría llegar por tal motivo a conocimiento del propietario a quien perjudica, y, por tanto, faltaría la base para la presunción en que la prescripción se funda, porque no teniendo noticia de la posesión el verdadero dueño, no puede éste prestar ni dejar de prestar su aquiescencia o conformidad a ella, y su silencio no puede ser interpretado en un sentido afirmativo de su voluntad favorable a la prescripción, que es la razón jurídica que legitima dicho modo de adquirir. De acuerdo con este criterio, ha dicho un autor que para el efecto de producir la prescripción ha de ser pública la posesión, 'porque lo poseído clandestina y secretamente no puede ser reclamado por su legítimo dueño y faltaría fundamento para presumir el abandono por parte de dicho dueño." 12 Manresa 827 (obra y ed. citadas).

En cuanto al elemento de pacifidad, sigue comentando Manresa: "La posesión ha de ser pacífica, porque la violencia, es opuesta a toda noción de derecho, y el que posee por virtud de un acto de fuerza, no tiene la posesión legítima o pacífica que requiere la ley como base de la prescripción, ni puede ampararse en la sanción que tiene el poseedor pacífico como dueño". 12 Manresa 829, (obra y ed. citadas).

La posesión ha de ser además continuada, o no interrumpida, como establece el art. 1841, y, por tanto, de acuerdo con

los arts. 1844, 1845, 1847 y 1848 se entenderá interrumpida en los siguientes casos: (1) por abandono de la cosa poseída por más de un año (interrupción natural); (2) por citación judicial al poseedor aunque sea por mandato de tribunal o Juez incompetente (interrupción civil); (3) por requerimiento judicial o notarial, siempre que dentro de dos meses de practicados se presente ante el tribunal o juez la demanda sobre posesión o dominio de la cosa en litigio; (4) por cualquier reconocimiento expreso o tácito que el poseedor hiciere del derecho del dueño.

La interrupción natural tiene que producirse antes de haberse consumado la prescripción por el transcurso del tiempo, pues como bien dice Manresa: "esos actos interruptores de la posesión en que está el que intenta prescribir, tienen que ser ejecutados antes de que la prescripción se haya ganado, pues en otro caso no constituirán la interrupción de la prescripción, sino una renuncia del derecho adquirido. Así lo tiene declarado el Tribunal Supremo [se refiere al Tribunal Supremo de España] en sentencia de 18 de marzo de 1902, en la que se estableció la doctrina de que la prescripción sólo puede estimarse interrumpida por actos de los previstos en la ley *realizados durante el tiempo marcado para que aquella pueda tener lugar; y no deben confundirse con lo que se verifiquen con posterioridad y puedan significar la intención de renunciar al beneficio de la prescirpción*". . . . . 12 Manresa 836 y 837 (obra y ed. citadas). (Corchete nuestro.)

Lo mismo sucede, según Manresa, cuando se trata de la interrupción de prescripción por renocimiento expreso o tácito que el poseedor hiciere del derecho del dueño: "no es necesario decir más para dejar justificada la disposición consignada en el citado art. 1948: [art. 1848 nuestro] pero para evitar torcidas interpretaciones a que pudiera dar lugar la amplitud de sus términos, debemos apresurarnos a manifestar que no todo acto de reconocimiento del derecho del dueño puede producir la interrupción, sino que para ello es indispensable que tales actos sean válidos y eficaces en derecho.

En efecto, si el reconocimiento llevado a cabo de una manera expresa, o los actos generadores del tácito tuvieran como único fundamento el error, el dolo, la violencia, o cualquiera otra causa de las que vician el consentimiento, ineficaces serían uno y otro medio de reconocimiento para producir la interrupción, porque la ley no podría reconocer efecto alguno en esa viciada manifestación de la voluntad o del consentimiento. Si los actos llevados a cabo por el poseedor al reconocer el derecho del dueño fueran producto de un delito, o de alguna causa contraria a las leyes o a la moral, esos actos serían nulos con arreglo a derecho, y los actos nulos no pueden producir efectos jurídicos que sean válidos y eficaces. *Además, esos actos de reconocimiento deben ser ejecutados para que resulten eficaces, antes de que la prescripción se hubiere perfeccionado*, porque en otro caso implicaría a lo sumo una renuncia del derecho ganado o adquirido por la prescripción, pero de ningún modo podrían venir a interrumpir el nacimiento de un derecho ya creado": 12 Manresa 854 y 855 (obra y ed. citadas). (Corchete nuestro.)

Conclusión: para que se produzca la prescripción extraordinaria que establece el art. 1859 del Código Civil de Puerto Rico, deben exigir nuestros tribunales de justicia la prueba de los siguientes hechos: (1) una posesión continuada durante treinta años sobre el inmueble, (2) por haberla así tolerado el dueño del inmueble, (3) ya que el prescribiente ha entrado en posesión del inmueble sin autorización, permiso o licencia otorgados por el dueño o en virtud de contrato celebrado con el dueño, (4) cuya posesión ha mantenido el poseedor en concepto público de dueño, de acuerdo con la creencia colectiva de la comunidad en que vive, no en virtud de la creencia propia que pueda tener el poseedor de ser él dueño del inmueble poseído y (5) cuya posesión resulte además pública y pacífica, y (6) sin que se haya interrumpido naturalmente, o sea, por abandono de la cosa por el poseedor, por más de un año, o civilmente, en virtud de diligencia judicial o notarial, o por un reconocimiento expreso o tácito del dere-

cho del dueño hecho por el poseedor, *antes de haber transcu-rrido los treinta años durante los cuales se consuma la pres-cripción*, y (7) sin que el poseedor. haya renunciado expresa o tácitamente a su título por prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria.

Establecida la doctrina en la forma antes enumerada, vea-mos cuáles son los hechos jurídicos que debemos extraer de la prueba presentada por ambas partes durante el juicio, ya que el tribunal inferior no hizo conclusiones de hecho o de derecho satisfactorias sobre la prescripción extraordinaria.

1. En cuanto a la posesión continuada del inmueble: no hay duda que la demandante y apelante ha vivido conti-nuamente la casa, objeto de esta acción, desde el año 1912, y la propia demandada y apelada, admitió que tanto la de-mandante y apelante como su hija Palmira han vivido en di-cha casa por cuarenta años, (t. 15).

2. En cuanto a haberlo tolerado así el dueño del inmueble: no hubo ninguna evidencia en el sentido que el causante de la sucesión mientras vivió, o su sucesión antes del año 1953, hicieran reclamación alguna contra la poseedora para recu-perar el inmueble, (t. 26), (t. 14), por lo cual resulta clara-mente establecido por la prueba el hecho, que la primera re-clamación sobre la propiedad, se hace cuando ya habían trans-currido más de los treinta años de posesión continuada que requiere la ley para la prescripción adquisitiva extraordi-naria.

3. En cuanto a haber entrado en posesión del inmueble con autorización del causante de la demandada y apelada, o en virtud de algún contrato celebrado con dicho causante para la ocupación de la casa, no hay evidencia alguna que demues-tre tal autorización o tal contrato, y por tanto, no se trata de un caso de mera tolerancia, sino de un claro caso de to-lerancia, equivalente a abandono de un derecho dominical.

4. En cuanto a la posesión en concepto de dueña, la prueba de la demandante y apelante fué en el sentido, que se mudó

a esa casa porque ella era la dueña de ella, que le entregó a don Ramón Córdova Díaz cuatrocientos treinta y cinco dólares para que se la comprara (t. 7 y 8), y que después del 1912 ha vivido en dicha casa en concepto de dueña, haciendo las reparaciones (t. 12) ; que muerto don Ramón Córdova Díaz. le mandaron a cobrar el alquiler; "pero yo le contesté que yo era la dueña de la casa y que no podía pagar nada" (t. 9) ; que ha vivido en concepto de dueña pública y pacíficamente desde el 1912, (t. 12). Una testigo de la demandante y apelante, doña Vitalia Córdova, declara, que conoce a la demandante y apelante viviendo en esa casa desde el 1912 hasta la fecha en que declara (6 de febrero de 1951), que no sabe si ella pagaba renta porque "esos son asuntos de dentro de la casa," (t. 16 y 17). Por su parte la demandada y apelada vuelve a aceptar que es cierto que la demandante y apelante vive la casa desde el 1912 (t. 16 y 17) y la administradora judicial de la sucesión demandada y apelada, al declarar sobre el pago de renta, dice: "yo le mandé a decir tan pronto fuí nombrada administradora judicial (1943 ó 1944) que tenía que pagar por vivirla y ella mandó a decir que no pagaba nada," (t. 25), lo cual corrobora la declaración de la demandante y apelante que "yo le contesté que yo era la dueña de la casa y que no podía pagar nada" (t. 9). Todas las inferencias que permiten los testimonios directos, tanto las primarias como las secundarias, son en el sentido que la demandante y apelante habitaba dicha casa en "concepto de dueña." Bien es verdad que tal concepto de dueña se desprende mejor del propio testimonio de ella, que del testimonio de su otra testigo doña Vitalia Córdova, dando la prueba la impresión que más que la creencia colectiva del concepto de dueño se establece la creencia privada del concepto de dueño de la propia demandante y apelante. Pero del hecho de la residencia de la demandante y apelante desde el 1912 hasta el 1951, corroborado como un hecho público por doña Vitalia Córdova, no es difícil inferir, cuando nada hay en la prueba que contravenga en forma alguna tal afirma-

ción, y por el contrario, es un hecho admitido por la propia demandada y apelada, que la posesión de la demandante y apelante era, en virtud de esa creencia colectiva de la buena fe, una posesión en concepto de dueña y cuando la propia doña Vitalia Córdova al preguntársele "¿la ha visto usted pagar canon o renta alguna dentro de la casa?" contesta categóricamente, "eso no lo sé; esos son asuntos *de dentro de la casa;* eso no lo sé yo", (t. 17) lo cual demuestra que desde fuera de la casa, su creencia como vecina del lugar, era que la demandante y apelante no era una inquilina de la casa, sino una verdadera poseedora en otro concepto que no era el de arrendataria. Habiéndose probado que el origen de la posesión fué una compra de la propiedad, efectuada por don Ramón Córdova Díaz con dinero de la poseedora, hecho que tampoco aparece impugnado por la evidencia de la otra parte, (t. 7 y 8) es indudable que para romper la presunción que establece el art. 365 de nuestro Código Civil que dispone "se presume que la posesión se sigue disfrutando en el mismo concepto en que se adquirió", el peso de la prueba correspondía a la administradora judicial y no a la poseedora. Pero la administradora judicial, cuando se le pregunta "¿desde cuándo la conoce usted viviendo en esa propiedad?" contesta "yo le voy a decir que yo no intervine en estos asuntos de mi padre", y no se establece en la prueba ninguna otra explicación sobre la posesión de la prescribiente.

Parece ser que la teoría de la demandada y apelada durante el juicio fué, que teniendo la sucesión como tiene, un título inscrito a nombre de su causante, ello era suficiente para derrotar el derecho posesorio de la demandante y apelante, de acuerdo con el art. 1849 de nuestro Código Civil que dispone: "contra un título inscrito en el registro de la propiedad no tendrá lugar la prescripción *ordinaria* del dominio o derechos reales en perjuicio de tercero, sino en virtud de otro título igualmente inscrito, debiendo empezar a correr el tiempo desde la inscripción del segundo." Esto desde luego no es así en la prescripción *extraordinaria* de

treinta años: Sentencia del Tribunal Supremo de España de 24 de enero de 1907: 106 Jur. Civ. 172, (ed. de la Editorial Reus S. A. de Madrid), (1922). "El artículo 1949 [1849 nuestro] del Código se refiere a la *prescripción ordinaria* del dominio o derechos reales, al disponer que ésta no tendrá lugar contra un título inscrito en el Registro de la Propiedad sino en virtud de otro título igualmente inscrito; no siendo, por tanto, aquel aplicable aunque se prescindiera de la condición de tercero que exige, *en el caso de tratarse de la prescripción de treinta años a que se contrae el artículo 1959* [1859 nuestro]": 7 Oyuelos-Digesto 864, último párrafo, (Ed. de la Imprenta de Julio Cosano), (1932). (Corchetes nuestros.)

5. En cuanto a que dicha posesión fuera pública y pacífica, la afirmación de la demandante y apelante, (t. 12), no es rebatida directa ni indirectamente por la prueba de la demandada y apelada, y por ello debemos considerarla como un hecho establecido.

6–7. En cuanto a que la posesión de la demandante y apelante fuera interrumpida, o su derecho de posesión renunciado, de acuerdo con la propia prueba de la demandada y apelada, aparece que dicha interrupción, consistente en un ofrecimiento de la demandante y apelante de pagar por la casa mil dólares, fué hecho en el 1948, o sea treinta y seis años después de la demandante y apelante haber entrado en posesión de la casa, (t. 24, t. 26) y ya hemos visto, que después de consumada la prescripción, cualquier reconocimiento tácito de la poseedora hay que considerarlo no como un acto interruptor de la posesión, sino como una posible renuncia del derecho de dominio, y tenemos que ver si dicha renuncia resulta eficaz en derecho.

Veamos cómo se produjo tal ofrecimiento. Como el título estaba inscrito a favor de don Ramón Córdova Díaz, la sucesión, basándose en la concurrencia de herederos menores de edad, pidió permiso para vender la casa de la poseedora como si fuera una propiedad de la sucesión, (t. 24). Cuando la

casa estaba pendiente de ser subastada, es que la demandante y apelante hace el ofrecimiento de pagar por ella mil dólares; la sucesión rechaza la oferta, alegando que el precio mínimo fijado para la subasta eran mil quinientos dólares, y entonces la poseedora entabla la presente acción contra la sucesión, para esclarecer definitivamente su derecho. En virtud de esta gestión judicial, la sucesión suspende la subasta y contesta la demanda.

Aceptando, aunque sin resolverlo, que el hecho escueto del ofrecimiento fuera suficiente para establecer un reconocimiento tácito del derecho de la sucesión como dueña, que interrumpiera el término de prescripción si se hubiera hecho en tiempo, es indudable que el mismo no es suficiente en derecho para constituir una renuncia del derecho de dominio que tenía la anterior poseedora, después de consumada la prescripción extraordinaria de los treinta años. Una persona puede ofrecer cualquiera cantidad para evitar una reclamación contra un inmueble suyo, o simplemente para evitarse un litigio. Dada la peculiar situación moral en que se encontraban las partes en este caso, tal ofrecimiento no resulta inusitado ni sospechoso.

■ El otro argumento aducido por la sucesión demandada y apelada es que ella pagaba las contribuciones sobre la propiedad. Ya hemos resuelto que el hecho de que una persona haya estado en posesión de un inmueble por más de treinta años sin haber pagado las contribuciones sobre la propiedad, no implica, por sí sólo, que sea una mera tenedora de la propiedad poseída: *Jiménez* v. *Municipio*, 70 D.P.R. 517, (*Todd*, hijo), (1949), cita precisa a la pág. 524. El abandono de un derecho por el dueño, a los efectos de la prescripción, crea una relación de derecho entre el dueño y el poseedor exclusivamente, y no tiene ninguna relación con otras personas, bien sean organismos públicos o simples particulares. No hay duda que hubo suficiente prueba en este caso para que el derecho de dominio de la demandante y ape-

lante por prescripción adquisitiva extraordinaria, quedara claramente establecido.

*Se revoca la sentencia dictada por el anterior Tribunal de Distrito de Puerto Rico, Sección de Bayamón, hoy Tribunal Superior de Puerto Rico, Sala de Bayamón, de fecha 16 de junio de 1952 y se ordena a la Sala de Bayamón del Tribunal Superior de Puerto Rico, a dictar una nueva sentencia declarando el derecho de dominio de la demandante y apelante Tomasa Dávila Padró, sobre la propiedad objeto de este procedimiento, y ordenando a su vez al señor Registrador de la Propiedad de Bayamón, la cancelación de cualesquiera inscripciones que tenga dicha propiedad a favor de don Ramón Córdova Díaz o de su sucesión, y cualesquiera otras disposiciones no incompatibles con esta opinión.*

El Juez Asociado Sr. Marrero no intervino.