Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL XII**

| JORGE ANÍBAL ORTIZ TORO<br><br>Apelado<br>v.<br><br>ROSITA DE LA ROSA RAMOS Y OTROS<br><br>Apelante | KLAN202400700 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2022CV01295 (SALÓN 206)<br><br>Sobre: Acción contradictoria de dominio y otros |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de septiembre de 2024.

Comparece ante nos, Rosita de la Rosa Ramos, en adelante apelante o señora De La Rosa, y solicita que modifiquemos la *Sentencia[1]* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en adelante TPI. Mediante dicho dictamen se declaró "Ha Lugar" la petición de nulidad de la Sentencia dictada el 16 de agosto de 2023, por entender que la misma se había emitido sin jurisdicción sobre la persona y, por lo tanto, era nula. Sin embargo, no incluyó la imposición de honorarios de abogado por temeridad solicitada.

Por los fundamentos que expondremos a continuación, se *modifica* la Sentencia recurrida.

Los hechos que anteceden a la controversia que atendemos son los siguientes.

---
[1] Apéndice de la apelante, Anejo 27, págs. 148-157.

**-I-**

El 24 de agosto de 2022, Jorge Aníbal Ortiz Toro, en adelante apelado o señor Ortiz Toro, radicó una *Demanda*[2] donde alegó que la apelante se presumía fallecida y que, tras haber realizado gestiones e investigaciones para conocer su paradero, o sobre los componentes de la sucesión si la hubiere, no logró obtener información alguna. Por otro lado, adujo que esta era la titular registral de una finca, parte de un proyecto de desarrollo conocido como Finquitas Betances y que este era el residente de la propiedad colindante. Así las cosas, dispuso que, ante el estado de desuso de la finca en cuestión, este entró en tenencia física del inmueble y lo comenzó a utilizar para la crianza de animales. En atención a lo anterior, el apelado alegó haber estado en posesión del bien inmueble de manera pública, ininterrumpida, pacífica y en concepto de dueño por aproximadamente veinticinco (25) años. Por todo lo cual, solicitó que se decretara la usucapión a su favor, se le declarara titular del derecho usucapido y que se le ordenara al Registro de la Propiedad a inscribir la finca a su nombre.

Así las cosas, el apelado presentó *Moción en Solicitud de Expedición de Orden y Emplazamiento Mediante Edicto*[3], donde incluyó sus proyectos de emplazamientos para su expedición por edicto y publicidad. En atención a dicha moción, el TPI ordenó al señor Ortiz Toro que presentara nuevamente los proyectos de emplazamiento por edicto con las advertencias de SUMAC. Posteriormente, el apelado presentó *Moción en Cumplimiento de Orden y en Solicitud de Expedición de Proyectos de Emplazamiento por Edicto*[4] mediante la cual, en cumplimiento con lo ordenado por el TPI, sometió los documentos corregidos. En ninguno de los proyectos de emplazamiento presentados se hizo referencia a

---

[2] *Id.*, Anejo 1, págs. 1-10.
[3] *Id.*, Anejo 2, págs. 11-16.
[4] *Id.*, Anejo 4, págs. 18-22.

declaración jurada alguna sobre las diligencias específicas efectuadas para conocer el paradero de la apelante o su última dirección física o postal como lo requiere la Regla 4.6 de Procedimiento Civil.[5]

Aun así, el 29 de diciembre de 2022, se expidieron los emplazamientos por edicto.[6]

El 8 de marzo de 2023, el señor Ortiz Toro presentó *Moción Consignando Emplazamientos por Edicto y en Solicitud de Anotación de Rebeldía[7],* donde informó al TPI sobre la publicación de los emplazamientos por edictos y solicitó se le anotara la rebeldía a la señora De La Rosa por esta no comparecer o solicitar prórroga para presentar alegaciones dentro del término dispuesto por ley.

En atención a la moción antes mencionada y mediante *Orden*[8] emitida el 13 de marzo de 2023, el TPI le anotó la rebeldía a la apelante.

Así las cosas, el apelado presentó *Moción en Solicitud de Sentencia Sumaria[9],* donde alegó que no existían hechos materiales en controversia y que se trataba de un derecho de dominio adquirido por prescripción adquisitiva extraordinaria. Alegó nunca haber sido perturbado de su posesión y que esta es de conocimiento público, a la vista, ciencia, paciencia y entendimiento del público en general, así como de los vecinos del sector. Acompañó dicha moción con declaraciones juradas de tres testigos que declararon que reconocían al señor Ortiz Toro como el dueño exclusivo del predio, debido a todos los años que había estado en posesión de este.

Sin embargo, el 27 de abril de 2023, el TPI emitió *Resolución*[10] declarando "No Ha Lugar" la solicitud de sentencia sumaria por

---

[5] Regla 4.6 de las Reglas de Procedimiento Civil (32 LPRA Ap. V).
[6] *Id.*, Anejo 5, 6, 7 y 8, págs. 23-26.
[7] *Id.*, Anejo 9, págs. 27-31.
[8] *Id.*, Anejo 10, pág. 32.
[9] *Id.*, Anejo 11, págs. 33-59.
[10] *Id.*, Anejo 12, pág. 60.

entender que en este tipo de caso era importante evaluar la credibilidad e idoneidad de los testigos.

Celebrado el juicio en su fondo, el 16 de agosto de 2023, el TPI emitió *Sentencia*[11] en rebeldía donde hizo constar las siguientes determinaciones de hecho: (1) que el apelado a poseído la propiedad en carácter de dueño, pública y pacíficamente, de manera continua y sin justo título por veinticinco (25) años, en exceso de los términos prescriptivos establecidos en ley, (2) que a los ojos de toda la comunidad este es conocido como el único dueño del predio sin que nadie lo inquiete o moleste de su posesión, (3) que la posesión del apelado es de conocimiento público, a la vista, ciencia, paciencia y entendimiento del público en general y (4) que para efectos de que opere la prescripción adquisitiva extraordinaria, la finca ha mantenido su misma demarcación y linderos y no es producto de una segregación ni agrupación de otras fincas. A la luz de todo lo anterior, declaró "Ha Lugar" la demanda presentada y ordenó a la Registradora de la Propiedad, Sección de San Germán, a reanudar el tracto sucesivo e inscribir la propiedad a nombre del apelante como único y legítimo titular de la propiedad, por haberla adquirido por prescripción adquisitiva extraordinaria, conforme al derecho vigente. Además, ordenó a toda dependencia pública o privada, incluyendo el Centro de Recaudación de Ingresos Municipales, en adelante CRIM, a que atemperaran sus registros con lo dispuesto.

Conforme a lo dispuesto en ley, dicha sentencia se notificó mediante edicto el 18 de agosto de 2023.[12]

Posteriormente, el 22 de abril de 2024, la señora De La Rosa presentó, sin someterse a la jurisdicción, *Urgente Comparecencia Especial y Sobre Nulidad de Sentencia*[13], donde esta alegó que con una investigación y diligencia básica sobre propiedades en la

---

[11] *Id.*, Anejo 19, págs. 81-90.
[12] *Id.*, Anejo 20, págs. 91-92.
[13] *Id.*, Anejo 21, págs. 93-118.

plataforma del CRIM, se podía localizar su paradero y, además, se hubiese podido obtener conocimiento de su dirección postal y todos los pagos que se realizan para sufragar los impuestos de la propiedad. Por otro lado, alegó que no se acompañó la expedición del edicto con una declaración jurada sobre todos los esfuerzos razonables realizados para dar con su paradero, como lo requiere la Regla 4.6 de Procedimiento Civil,[14] por lo que no había constituido una notificación adecuada y el tribunal no había adquirido jurisdicción sobre su persona. Además, arguyó que el señor Ortiz Toro indujo a error al tribunal al ocultar la dirección física y residencial que surge del registro público del CRIM y el hecho de que las cuentas y pagos al CRIM se encontraban al día y habían sido satisfechos por la apelante. Adujo también que en este caso, no se daba una prescripción adquisitiva extraordinaria, toda vez que la ley que aplica al caso es la ley del Código Civil de Puerto Rico de 1930, la cual dispone en su Artículo 1859 un plazo prescriptivo de 30 años para la usucapión extraordinaria o de mala fe.[15] Tomando en cuenta lo anterior, solicitó: (1) que se declarara nula y sin efecto jurídico la sentencia emitida, (2) que se le prohibiera al señor Ortiz Toro realizar cualquier acto de enajenación sobre la finca, (3) que se ordenara al apelado a cesar y desistir de intervenir con el dominio de dicha propiedad, (4) que se le ordenara a cesar y desistir inmediatamente de la posesión y uso del inmueble, (5) que ordenara al Registrador de la Propiedad de San Germán, al CRIM, al Municipio de Cabo Rojo y cualquier otra agencia, a revertir sus registros al estado original, previo a la sentencia emitida y (6) que condenara al señor Ortiz Toro al pago de las costas, gastos y una suma razonable en concepto de honorarios de abogado por temeridad.

---

[14] Regla 4.6 de las Reglas de Procedimiento Civil de 2009, *supra.*
[15] Código Civil 1930, 31 LPRA sec. 5280.

Por su parte, el apelado presentó *Réplica en Oposición a "Moción de Relevo de Sentencia por Nulidad de Sentencia"*[16], donde recalcó que se cumplió cabalmente con todos los requisitos de estricto cumplimiento que requiere el procedimiento para justificar la usucapión y el dominio, además de los requisitos de publicación de edictos, notificación y citación. Además, se desfiló prueba documental y testifical en apoyo. En atención a lo anterior, aclaró incorrectamente que del cuerpo de la Regla 4.6 de Procedimiento Civil[17] se desprende que esta exige una declaración jurada para expresar que la persona no ha sido localizada y las diligencias realizadas para dar con su paradero pero que, también permite que dicha información surja de la demanda. Además, arguyó que, de la búsqueda manual en la página de catastro digital, para identificar la propiedad y su número de catastro, no surgía ninguna dirección física ni postal, además de que el CRIM no es un registro público, por lo que no ofrece información privilegiada a quien no sea parte interesada o acredite un poder de representación. Queriendo decir que su alcance era limitado, contrario a lo alegado por la señora De La Rosa. Por último, citó el caso *Dávila v. Córdova*[18], donde alegó que el Tribunal Supremo de Puerto Rico, en adelante TSPR, entendió que se había probado que se cumplía con los términos requeridos para que se conformara la prescripción adquisitiva extraordinaria por haber demostrado, mediante prueba testifical, que el demandante y su familia llevaban en tenencia física del bien inmueble por más de veinticinco (25) años, aun cuando no surgía que se había cumplido el término exacto de treinta (30) años.[19]

---

[16] *Id.*, Anejo 25, págs. 134-146.
[17] Regla 4.6 de las Reglas de Procedimiento Civil, *supra.*
[18] *Dávila v. Córdova*, 77 DPR 136 (1954).
[19] Contrario a lo aducido por el apelado en su *Réplica en Oposición a "Moción de Relevo de Sentencia por Nulidad de Sentencia,* en el caso *Dávila v. Córdova*, supra, se menciona que las partes vivieron en la casa "por cuarenta años". *Dávila v. Córdova*, supra, pág. 151.

El TPI procedió a resolver y dictó *Sentencia*[20], mediante la cual declaró "Ha Lugar" la moción presentada por la apelante por entender que no podía dictar sentencia en su contra, toda vez que no adquirió jurisdicción sobre su persona, por no haberse cumplido con el debido proceso de ley y los requisitos que exige la Regla 4.6 de Procedimiento Civil[21] para el emplazamiento por edicto.

Inconforme, la señora De La Rosa presentó *Reconsideración*[22], donde le solicitó al TPI que reconsiderara la imposición del pago de honorarios de abogado por temeridad al señor Ortiz Toro por una suma no menor de $5,000.00, tomando en consideración que había ocultado información del tribunal e inducido el mismo a error, además de presentar una petición de usucapión extraordinaria, sin haber transcurrido el plazo de prescripción requerido por ley.

En desacuerdo, el apelado presentó *Moción en Oposición de Reconsideración y Memorando de Costas*[23], donde alegó haber demostrado tener una justa y meritoria causa de acción y no haber promovido un pleito injustificado ya que, basado en el tiempo que se lleva disfrutando y explotando la propiedad, entablaron la acción de buena fe y a sabiendas de su derecho adquirido, por lo que no obró temeridad alguna. Recalcó que la sentencia se había declarado nula por un simple tecnicismo de notificación y que este había esbozado en su oposición que había realizado una responsable y concienzuda búsqueda para dar con su paradero.

El 25 de junio de 2024, el TPI emitió *Resolución*[24] mediante la cual declaró "No Ha Lugar" la imposición de honorarios de abogados por temeridad.

---

[20] *Id.*, Anejo 27, págs. 148-157.
[21] Regla 4.6 de las Reglas de Procedimiento Civil, *supra.*
[22] *Id.*, Anejo 29, págs. 160-165.
[23] *Id.*, Anejo 30, págs. 166-168.
[24] *Id.*, Anejo 31, pág. 169.

Aun inconforme, la señora De La Rosa acude ante nos mediante el recurso de epígrafe y señala que el TPI cometió los siguientes errores:

### PRIMER ERROR

**Erró el Tribunal de Primera Instancia al negarse a imponer honorarios de abogado habida cuenta de sus determinaciones constitutivas de temeridad al concluir en la <u>Sentencia</u> declarando nula una <u>Sentencia</u> previa por falta de jurisdicción sobre la persona de la demandada Rosita de la Rosa Ramos, que se:** *"ocultó al tribunal la dirección física y residencial de la demandada Rosita de la Rosa Ramos contenida en un registro público (CRIM)"* **y que** *"también le <u>ocultó</u> al tribunal que las cuentas y pagos al CRIM de la propiedad se encontraban al día y habían sido satisfechas por la demandada Rosita de la Rosa Ramos.*

### SEGUNDO ERROR

**Abusó de su discreción el Tribunal de Primera Instancia al no a imponer honorarios de abogado por temeridad luego de sus determinaciones de que se ocultó información al foro primario.**

Se le otorgó término a la parte apelada para presentar su alegato, pero no lo hizo, por lo que estamos en posición de resolver.

### -II-

El TSPR ha definido temeridad como "aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos."[25] Se actúa con temeridad cuando por "terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos" se obliga a que la otra parte tenga que asumir gastos innecesarios. La temeridad es "contraria a los principios de eficiencia en la administración de la justicia y al buen funcionamiento de los tribunales."[26]

---

[25] *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 149 (2022).
[26] *Id.*, pág. 149.

La sanción que procede en todo tipo de acción judicial cuando una parte ha sido temeraria es la imposición de honorarios de abogados.[27] Específicamente, la Regla 44.1 (d) de Procedimiento Civil dispone lo siguiente:

> (d) *Honorarios de abogado.* En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.[28]

Para poder reclamar honorarios de abogado, es imprescindible que se haya actuado temerariamente durante la tramitación del pleito.[29] "Una vez se determina la temeridad, la imposición de honorarios de abogado [...] por temeridad es imperativa."[30] Sin embargo, dicha sanción descansa en la sana discreción del tribunal[31] en atención a su propósito de "disuadir la litigación frívola y compensar, en lo posible, los gastos incurridos por la parte que no ha sido temeraria."[32] En esa línea, la facultad de imponer honorarios de abogado "es la mejor arma que tienen los tribunales para gestionar eficientemente los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios."[33] Así las cosas, "[e]l poder inherente para imponer sanciones permite una flexibilidad para escoger la sanción y ajustarla a los hechos y al propósito que se persigue."[34]

Cabe recalcar que, la imposición de los honorarios de abogado está reconocida como una práctica que recae, específicamente, en la

---

[27] *Id.*, pág. 148.
[28] Regla 44.1(b) de las Reglas de Procedimiento Civil de 2009, *supra.*
[29] *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 148.
[30] *Id.,* pág. 147.
[31] *Id.*, pág. 151.
[32] *Id.*, pág. 147.
[33] *Id.*, pág. 150.
[34] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., LexisNexis, 2017, pág. 247.

discreción del tribunal sentenciador. Los tribunales apelativos solo intervendrán cuando dicho foro haya abusado de tal facultad.[35]

El TSPR ha reconocido que actúa temerariamente la parte que: (1) "insiste contumazmente en alegar algo sin alguna prueba fehaciente que lo apoye, (2) niega los hechos que le constan o son de fácil corroboración,"[36] (3) "contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente," (4) "se arriesga a litigar un caso del que prima facie se desprende su negligencia," y (5) "niega un hecho que le consta ser cierto."[37] Por otro lado, no es temeraria la parte que "plantea asuntos complejos y novedosos, sobre los cuales no existan precedentes vinculantes, o cuando exista una desavenencia honesta en cuanto al derecho aplicable a los hechos del caso."[38]

**-III-**

La apelante arguye que el ocultar información del tribunal es un acto censurado por el TSPR. Entiende que el TPI abusó de su discreción al no imponer el pago de honorarios de abogado por temeridad cuando sus determinaciones, contenidas en la Sentencia, describen una conducta temeraria y censurada por parte del apelado y su representación legal. Consecuentemente, entiende que la imposición de honorarios de abogado es obligatoria. Tiene razón.

El acto de ocultar información del tribunal es altamente reprochable, más aún cuando dicha información era de fácil corroboración. Cuando se le oculta información al tribunal, se le induce a error y consecuentemente, a una grave y errónea aplicación de la ley, que tiene como resultado que los derechos de otros se vean violentados. Tal como ocurrió en el caso de marras. Además de obligar a la apelante a incurrir en gastos legales que, de otro modo,

---

[35] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010).
[36] *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 149.
[37] *Feliciano Polanco v. Feliciano González*, 147 DPR 722, 750 (1999).
[38] *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 149.

no hubiese tenido, para poder recobrar su derecho de propiedad sobre el inmueble en controversia, del cual fue desprovista por el engaño al cual fue inducido el TPI por culpa del recurrido. Así las cosas, y en atención al principio básico de que quien va en busca de equidad debe de tener las manos limpias, quien triunfa en un pleito debe ser aquel a quien le asista la razón y no quien pretenda ser el más listo o el más astuto.[39] Por tanto, el TPI ante esta situación tenía el deber de imponer a favor de la parte aquí apelante los honorarios de abogados correspondientes.

Tomamos la oportunidad para recordarle a la representación legal del apelado lo establecido en el Canon 2 del Código de Ética Profesional[40] que exige un deber de realizar los esfuerzos necesarios para mantener un grado de excelencia y competencia en la profesión y, además, la encomienda principal del Canon 35[41]: "la verdad como atributo inseparable del ser abogado."[42] El letrado que le provea al tribunal información falsa, que oculte información que deba de ser revelada e induzca al juzgador a error, incumple con el Canon 35.[43] Un abogado no puede violar la ley ni cometer un engaño con el fin de triunfar en la causa de acción que lleva.[44] Así las cosas, todo abogado o abogada debe de cerciorarse diligentemente sobre la veracidad de la información que le provee al tribunal. De lo contrario, incumple con el grado de excelencia que se espera de él y se arriesga a que su conducta refleje una falta de sinceridad y honradez.

---

[39] *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 29 (1971); *Pueblo v. Santiago*, 160 DPR 618, 646 (1971).
[40] Canon 2 del Código de Ética Profesional, 99 DPR 999 (1970).
[41] Canon 35 del Código de Ética Profesional, 99 DPR 999 (1970).
[42] *In re Cardona Estelritz*, 212 DPR 649, 666 (2023); *In re Crespo Pendás*, 211 DPR 510, 517 (2023).
[43] *In re Valentín Custodio*, 187 DPR 529, 547 (2012); *In re Díaz Ortíz*, 150 DPR 418, 426-427 (2000); *Colón y otros v. JCA*, 148 DPR 434 (1999); *In re Padilla Rodríguez*, 145 DPR 536 (1998).
[44] *In re Díaz Ortíz, supra.*

**-IV-**

Por lo antes expuesto, se modifica la sentencia apelada para imponer la cantidad de seis mil dólares ($6,000) por concepto de honorarios por temeridad a favor de la apelante.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones