En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Wanda Colón Cortés, Lillian Rohena y las Comunidades Opuestas a la Ruta 66<br><br>Recurridos<br><br>V.<br><br>Junta de Calidad Ambiental, Autoridad de Carreteras y Transportación de Puerto Rico<br><br>Peticionaria | Certiorari<br><br>99 TSPR 85 |

Número del Caso: CC-1998-0161 Consolidado con CC-1998-163

Abogados de la Junta de Calidad Ambiental

> Lcdo. Fernando Molini Vizcarrondo
> Hon. Carlos Lugo Fiol,
> Procurador General

Abogados de la Autoridad de Carreteras y Transportación de Puerto Rico

> Lcdo. Luis A. Rivera Cabrera
> Lcdo. Juan Carlos Fierres
> Lcdo. Melvin E. Maldonado Colón
> Lcdo. Raúl Castellanos Malavé

Abogada de Wanda Colón Cortés, Lillian Rohena y las Comunidades Opuestas a la Ruta 66

> Lcda. Jessica Rodríguez Martin

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel integrado por: Hon. Alfonso de Cumpiano
                     Hon. Giménez Muñoz
                     Hon. Miranda de Hostos

Fecha: 6/2/1999

Materia: Derecho Administrativo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda Colón Cortés y otros
     Recurridos

       v.                                  Certiorari

Junta de Calidad Ambiental
     Peticionaria

------------------------------

Wanda Colón Cortés y otros      CC-98-161
     Recurridos              CC-98-163

       v.

Autoridad de Carreteras y
Transportación de Puerto Rico
     Peticionaria

Opinión del Tribunal emitida por el Juez Presidente, señor Andréu García

En San Juan, Puerto Rico, a 2 de junio de 1999

Mediante una resolución emitida el 18 de marzo de 1998, consolidamos los recursos de epígrafe y expedimos mandamiento de certiorari dirigido al Tribunal de Circuito de Apelaciones.

El recurso número CC-98-161 fue presentado por la Autoridad de Carreteras y Transportación de Puerto Rico (en lo sucesivo, la "ACT"); el número CC-98-163, por la Junta de Calidad Ambiental (en lo sucesivo, la "JCA"). En ellos se solicita la revisión de dos resoluciones emitidas por el Tribunal de Circuito de Apelaciones durante la consideración de un recurso presentado por Colón Cortés y otros (en lo sucesivo, los "recurridos") para revisar las actuaciones de la JCA y la ACT en el proceso de declaración de impacto ambiental del proyecto vial conocido como la "Ruta 66".

En esencia, los casos consolidados requieren que resolvamos si el foro apelativo posee jurisdicción para considerar los méritos del recurso instado por los recurridos. Examinadas las alegaciones de las partes y el derecho aplicable, resolvemos que el Tribunal de Circuito de Apelaciones carece de jurisdicción para considerar el recurso, toda vez que el mismo fue presentado prematuramente. Resolvemos, además, que la notificación de la JCA a la ACT, en términos de que la declaración de impacto ambiental sometida cumple con la Ley Sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. secs. 1121 et seq., es inválida, pues la JCA no ha finalizado el trámite de vistas públicas de conformidad con su Reglamento Sobre Declaraciones de Impacto Ambiental y su Ley Orgánica.

## I.

En el recurso presentado ante el Tribunal de Circuito, los recurridos les imputan a la JCA y a la ACT la comisión de cuatro errores. En esencia, los recurridos cuestionan la conformidad de la declaración de impacto ambiental (DIA) del proyecto con la Ley sobre Política Pública Ambiental, supra, y la reglamentación que la complementa. Los hechos son los siguientes:

En julio de 1992, la ACT circuló una DIA preliminar (DIA-P), en la que describió la acción propuesta como la construcción de un expreso de acceso controlado, con una extensión aproximada de 24.3 kilómetros, a través de los municipios de San Juan, Trujillo Alto, Carolina y Canóvanas. El expreso comenzaría en la carretera PR-21 en Río Piedras, cerca de la Penitenciaría Estatal, y terminaría en la intersección de las carreteras PR-188 y PR-3, en Canóvanas. Véase, 1 Declaración de Impacto Ambiental Preliminar § 1.0 (julio 1992). No obstante, en la DIA-P se contempló la posibilidad de extender la vía hasta Fajardo. Véase id., § 3.1.

La JCA informó oportunamente al público sobre la disponibilidad de la DIA-P y designó un panel examinador para dirigir las vistas sobre el

proyecto propuesto. El 15 de abril de 1993, luego de celebradas las vistas públicas, el panel rindió un informe.

Determinó que para poder evaluar adecuadamente el impacto ambiental de la acción propuesta era necesario ampliar la información consignada en la DIA-P, mediante un suplemento o una DIA final (DIA-F). En el suplemento o la DIA-F, la ACT debía atender varios señalamientos específicos del panel.

Entre sus señalamientos, el panel indicó que la DIA-P no cumplía con el inciso (b) de la sección 5.3.7 del Reglamento sobre Declaraciones de Impacto Ambiental, Reglamento Núm. 3106 de 4 de junio de 1984 de la Junta de Calidad Ambiental. Esta disposición le exige a la agencia proponente "[d]ar consideración substancial [en la DIA] a cada alternativa evaluada en forma detallada, incluyendo la acción propuesta, de manera que las personas que utilicen la DIA puedan evaluar y comparar los méritos de cada alternativa". El panel señaló también que la DIA-P no discutía el impacto secundario o indirecto que tendría el desarrollo socioeconómico a lo largo de la vía propuesta. Además, ante la posible extensión de la vía hasta Fajardo, el panel recomendó discutir el impacto ambiental acumulativo de todas las etapas del proyecto.

Mediante una resolución emitida el 13 de mayo de 1993, la JCA aprobó el informe del panel en todas sus partes, lo que significaba que la ACT tenía que discutir con mayor detalle, entre otros aspectos, (1) las alternativas evaluadas, (2) las presiones de desarrollo a lo largo de la vía y (3) el impacto ambiental acumulativo de todas la etapas del proyecto.

El 2 de mayo de 1996, la ACT circuló un suplemento a la DIA-P (DIA-S). El proyecto se describía ahora como "una vía expreso con una longitud aproximada de 16 kilómetros..., comenzando en el Municipio de Carolina[,] a la [a]ltura [del centro comercial] Plaza Carolina[,] y finalizando en Canóvanas[,] en el mismo punto donde se proponía finalizar originalmente, pero desplazada a la altura de la [carretera] PR-962...". 1 Suplemento a la Declaración de Impacto Ambiental § 1.0, en la pág. 1-6

(febrero 1996). La variaciones entre esta concepción y la original respondieron, según la ACT, "a los fines de proveer un sistema de transportación que sir[viera] la región [E]ste y que a su vez redu[jera] el potencial de impacto en los recursos físicos y naturales del área circundante". Véase id., en la pág. 1-1.

En la DIA-S, sin embargo, se reconocía aún la posibilidad de futuras extensiones de la vía, entre ellas, una fase de Canóvanas a Río Grande (segunda fase). No obstante, la ACT aseguró que el "el proyecto[,] según presentado en... [la DIA-S,] y de acuerdo con la reglamentación federal vigente, no constitu[ía] la segmentación de un proyecto mayor y[,] por lo tanto[,] deb[ía] ser evaluado de acuerdo con sus propios méritos". Véase id., en la pág. 1-13. La ACT indicó que sometería posteriormente los documentos pertinentes para la construcción de la segunda fase del proyecto[1]. Véase id.

El 24 de mayo de 1996, los recurridos presentaron una moción ante la JCA solicitando la preparación de una nueva DIA. Alegaron que la ACT había desatendido los requerimientos específicos de la JCA y, en su lugar, había presentado una DIA-S que trataba sobre un proyecto distinto del descrito en la DIA-P. El 10 de junio de 1996, la JCA emitió una resolución en la que resolvió acoger bajo estudio la moción y le solicitó a la ACT sus comentarios. El 27 de junio de 1996, se celebraron vistas públicas sobre la DIA-S. Los recurridos comparecieron y reiteraron allí lo planteado en su moción, respecto a la necesidad de una nueva DIA. El 9 de agosto de 1996, la ACT presentó ante la JCA una moción oponiéndose a la solicitud de los recurridos.

El 29 de enero de 1997, el señor Héctor Russe Martínez, Presidente de la JCA, le envió una carta al señor Carlos Pesquera, Secretario del

---

[1] Cabe señalar que el 24 de junio de 1998, la Junta de Planificación emitió una resolución adoptando una extensión de la PR-66, desde Canóvanas hasta Río Grande.

Departamento de Transportación y Obras Públicas[2], en la cual le informó lo siguiente:

> Entendemos que al presentar... [la DIA-S] su instrumentalidad ha cumplido con el Artículo 4(C) de la Ley sobre Política Pública Ambiental ....

> De acuerdo a la Sección 5.2.1 del Reglamento sobre Declaraciones de Impacto Ambiental... el proceso realizado cumple con lo requerido en dicho reglamento, debido a que el cambio propuesto se considera un proyecto independiente de cualquier otro tramo que se proponga realizarse en el futuro. Cualquier proyecto de construcción de carretera que conecte al evaluado en este documento será tratado como un proyecto individual para el cual se deberá someter el documento ambiental correspondiente[3],[4].

Así las cosas, el 16 de abril de 1997, los recurridos presentaron un recurso de revisión ante el Tribunal de Circuito de Apelaciones. Alegaron que la JCA nunca había resuelto su moción solicitando la preparación de una nueva DIA, y que conocieron la decisión contenida en la carta citada a través de una noticia publicada en la prensa el 13 de febrero de 1997. En su escrito, los recurridos impugnaron la suficiencia de la DIA-S, así como la decisión de la ACT de considerarla como una DIA final (DIA-F).

El Tribunal de Circuito desestimó el recurso por prematuro, debido a la ausencia de una decisión final de la JCA de la cual recurrir. Los recurridos comparecieron entonces ante esta Corte mediante una petición de certiorari y una moción en auxilio de jurisdicción, las cuales denegamos mediante una resolución emitida el 24 de junio de 1997, en el caso número CC-97-340, Colón Cortés y otros v. Junta de Calidad Ambiental

---

[2] El Secretario del Departamento de Transportación y Obras Públicas es también el Presidente de la Autoridad de Carreteras y Transportación. Véase, Ley de la Autoridad de Carreteras y Transportación, Ley Núm. 74 de 23 de junio de 1965, según enmendada, 9 L.P.R.A. § 2002 (1996). No obstante, la carta debió ser dirigida al Dr. Carlos Pesquera en su calidad de Presidente de la ACT.

[3] Esta determinación es incompatible con el requerimiento que hizo la propia JCA en su resolución de 13 de mayo de 1993, al adoptar el informe del panel examinador, en cuanto a la necesidad de que la DIA-P discutiera el impacto ambiental acumulativo de todas las etapas del proyecto propuesto.

[4] En la carta se hicieron, además, varias recomendaciones.

<u>y Autoridad de Carreteras y Transportación</u>. El recurso pendiente en este momento ante la consideración del Tribunal de Circuito lo radicaron los recurridos el 9 de octubre de 1997, al enterarse de que la ACT había publicado un aviso en la prensa el 16 de agosto de 1997, informando acerca de la disponibilidad de la DIA-F del proyecto. La ACT y la JCA solicitaron la desestimación del recurso por falta de jurisdicción. Alegaron que éste fue presentado tardíamente.

El Tribunal de Circuito denegó la solicitud de desestimación mediante una resolución emitida el 18 de diciembre de 1997. La ACT y la JCA presentaron sendas mociones de reconsideración, las cuales fueron denegadas mediante una resolución emitida el 25 de febrero de 1998.

Inconformes, la JCA y la ACT presentaron sendos recursos de certiorari ante este Tribunal para revisar dichas resoluciones. Son éstos los recursos consolidados CC-98-161 y CC-98-163. Luego de varios incidentes procesales, los recurridos presentaron una moción en auxilio de nuestra jurisdicción en la que solicitaron que ordenemos la paralización de la construcción del proyecto hasta tanto resolvamos ambos recursos. En la alternativa, solicitaron que resolvamos los recursos con la mayor premura posible.

Examinados los méritos de sus planteamientos, emitimos una Resolución el 9 de noviembre de 1998 en la que ordenamos a las partes a que en un término no mayor de diez (10) días mostraran causa por la cual no debíamos "revocar las resoluciones recurridas y ordenar la desestimación del recurso de revisión pendiente ante el Tribunal de Circuito de Apelaciones por prematuro, toda vez que no existe una DIA final debidamente aprobada que le permita a la ACT continuar con la construcción del proyecto".

En específico, requerimos a las partes que discutieran lo siguiente:

1. si la Junta de Calidad Ambiental ha emitido una decisión de conformidad con el inciso (c) del artículo 14 de su ley orgánica, 12 L.P.R.A. sec. 1134(c) (1997), resolviendo la moción presentada por la parte recurrida el 24 de mayo de 1996, en la cual le solicitaron a esa agencia que le ordenara a la ACT preparar una nueva DIA, y

2. si, ante las circunstancias particulares de este caso, la ACT podía considerar como DIA-F la DIA-S, en ausencia de una recomendación específica de la JCA.

Las partes dieron cumplimiento a nuestra Resolución. Así pues, con el beneficio de su comparecencia, y examinado el derecho aplicable, resolvemos.

## II.

En la primera resolución recurrida, el Tribunal de Circuito interpretó que el Reglamento sobre Declaraciones de Impacto Ambiental (en lo sucesivo, el "RDIA") establece un término de treinta días para presentar comentarios sobre la DIA-F. Concluyó, en consecuencia, que el término para solicitar la revisión comienza a contar luego de transcurrido ese período de comentarios. Bajo esta teoría determinó que tenía jurisdicción.

En la segunda resolución recurrida, sin embargo, el Tribunal de Circuito aplicó la sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. § 2164 (1992) (en lo sucesivo, la "LPAU") y determinó que el término de revisión judicial no había comenzado a contar debido a que la Junta de Calidad Ambiental nunca les notificó a los recurridos su decisión adoptando la DIA-F.

Los recurrentes argumentan, contrario a lo que determinó el Tribunal de Circuito en su primera resolución, que el RDIA no establece un término para comentar la DIA-F. Sostienen, por lo tanto, que el término de revisión comienza a contar efectivamente a partir de la fecha de publicación del aviso exigido por el RDIA para informar sobre la disponibilidad de la DIA-F.

En cuanto a los argumentos ofrecidos por el Tribunal de Circuito en la segunda resolución recurrida, los recurrentes sostienen que la JCA no tiene obligación jurídica alguna de aceptar la DIA-F y que es incorrecta la aplicación del requisito de notificación exigido por la LPAU. Sostienen que el procedimiento ante la JCA culminó con la publicación del aviso en la prensa y que, a partir de esa fecha, comenzó a contar el

término para solicitar la revisión de la DIA-F.

Tanto la JCA como la ACT parten de la premisa de que la ACT podía considerar la DIA-S (es decir, la DIA-P suplementada) como una DIA-F en las circunstancias particulares de este caso y de que la JCA culminó el proceso de vistas públicas de acuerdo al Reglamento sobre Declaraciones de Impacto Ambiental. Ello es incorrecto.

La sección 5.5.6.1 del RDIA establece que una agencia proponente podrá considerar una DIA-P como DIA-F cuando:

a. La DIA Preliminar preparada satisfaga todos los requisitos del Artículo 4(C) de la Ley Número 9, del 18 de junio de 1970, según enmendada, y de este Reglamento.

b. Los comentarios hechos sobre la DIA Preliminar sean favorables.

c. La preparación de una DIA Final constituya una repetición de la información incorporada a la DIA Preliminar.

ch. No existan comentarios de importancia que considerar en una DIA Final, y

d. Cuando la Junta así lo recomiende.

Según surge de los hechos consignados en la sección I anterior, la agencia proponente en este caso, la ACT, no podía considerar la DIA-S como DIA-F en virtud de ninguno de los incisos (a) al (ch) transcritos. La JCA le requirió específicamente a la ACT que preparara un suplemento a la DIA-P. La única forma en que la ACT podía tomar la DIA-S como DIA-F era luego de que la JCA determinara que la ACT había cumplido con lo requerido, aceptara la DIA-S y recomendara la publicación de ésta como DIA-F. Sostener lo contrario sería aceptar que la resolución de la JCA exigiendo la preparación del suplemento de la DIA-P carecía de fuerza alguna y que su cumplimiento quedaba al arbitrio de la ACT. Ello sería contrario a la política pública ambiental y a la función que este Tribunal le ha reconocido a la JCA de "velar por 'el fiel cumplimiento de la política pública y [los] requisitos procesales y sustantivos contenidos en la [Ley sobre Política Pública Ambiental] y los reglamentos aprobados a su amparo'". <u>Misión Industrial de P.R., Inc.</u> v. <u>Junta de Planificación de P.R.</u>, op. de 30 de junio de 1998, 98 J.T.S. 79, en la

pág. 1177 (citando a <u>García Oyola</u> v. <u>Junta de Calidad Ambiental</u>, op. de 21 de febrero de 1997, 97 J.T.S. 25, en la pág. 663); <u>véase además</u>, <u>Misión Industrial de P.R., Inc.</u> v. <u>Junta de Calidad Ambiental</u>, op. de 29 de junio de 1998, 98 J.T.S. 77, en la pág. 1105.

Las únicas "autorizaciones" de la JCA a estos efectos son la carta enviada al Dr. Carlos Pesquera el 29 de enero de 1997 y otra que el señor Héctor Russe Martínez, Presidente de la JCA, le envió el 15 de agosto siguiente al Dr. Carlos Colón de Armas, Subdirector Ejecutivo de la ACT. La parte pertinente del contenido de esta última carta es el siguiente:

> La Autoridad de Carreteras y Transportación ha cumplido con las disposiciones establecidas en el Artículo 4(C) de la Ley Número 9 del 18 de junio de 1970, según enmendada, conocida como la Ley sobre Política Pública Ambiental y con la Sección 5.5.6.1 del Reglamento sobre Declaraciones de Impacto Ambiental (en adelante "RDIA") convirtiéndose así la Declaración de Impacto Ambiental Preliminar JCA 92-0007(AC) en una Declaración de Impacto Ambiental Final.

> Por este medio se le autoriza a publicar el aviso público determinando que la Declaración de Impacto Ambiental Preliminar se ha convertido en una Declaración de Impacto Ambiental Final según lo establecido por la Sección 5.5.6.2 del RDIA y teniendo que cumplir también con los requisitos sobre avisos y notificaciones establecidos en la Sección 6 del RDIA.

Ambas cartas – tanto la del 29 de enero como la del 15 de agosto – son insuficientes para dar por finalizada la etapa de vistas públicas y consideración de los comentarios de la ciudadanía y, en consecuencia, declarar que la DIA-P sometida por la ACT cumple con el artículo 4(c) de la Ley Sobre Política Pública Ambiental, supra, y que por ello se ha convertido en la DIA-F. Veamos.

### III.

Los recurridos en este caso presentaron una moción el 24 de mayo de 1996 ante la JCA solicitando la preparación de una nueva DIA. El 10 de junio de 1996, la JCA <u>acogió esta moción y le solicitó a la ACT sus comentarios</u>. Al respecto, indicó en su resolución lo siguiente:

> Luego de discutidos todos los méritos de este asunto y al amparo de los poderes y facultades que le confiere a esta Junta de Calidad Ambiental la [...] Ley Sobre política Pública Ambiental [...] por la presente esta junta RESUELVE:

> Se acoge bajo estudio la Moción de la Lcda. Jessica Rodríguez del 24 de mayo de 1996. Se solicita a la Autoridad de Carreteras

comente las alegaciones de la comunidad. Resolución y Notificación de la Junta de Calidad Ambiental de 10 de junio de 1996; Apéndice, en la pág. 1126.

El 27 de junio de 1996 la JCA celebró vistas públicas en la cual, entre otras cosas, se discutieron los méritos de la solicitud de los recurridos. El 9 de agosto de 1996, la ACT presentó ante la JCA una moción oponiéndose a la solicitud de preparación de una nueva DIA. La JCA, sin embargo, no resolvió expresamente la controversia planteada por los recurridos. Por esta razón, en nuestra orden de mostrar causa le requerimos a las partes que discutieran si la JCA debía resolver la moción de los recurridos como condición para dar por finalizado el proceso de elaboración de la DIA-Final.

En su comparecencia ante nos, las peticionarias sostienen que la JCA no está obligada a emitir una resolución en cuanto a la moción solicitando una nueva DIA presentada por los recurridos. Aducen, en esencia, que esa solicitud se enmarca dentro de los procesos investigativos de la agencia, las cuales no requieren que la entidad emita decisiones que adjudiquen o resuelvan una controversia. Añaden que la participación de los recurridos se dio en el contexto de la intervención pública contemplada por el Reglamento sobre Declaraciones de Impacto Ambiental, la cual, a su juicio, se limita a "comentar" el contenido de la declaración de impacto ambiental. En este contexto aducen, que considerar que la ciudadanía puede requerir información a la Junta y hacer planteamientos que deben ser resueltos por dicho organismo, sería, en términos prácticos, convertir el proceso de consideración de una declaración de impacto ambiental en un proceso adjudicativo, de forma contraria a la ley y los reglamentos aplicables.

Coincidimos en que el proceso de elaboración de una declaración de impacto ambiental es un procedimiento sui generis. De ordinario, no constituye propiamente un proceso de naturaleza adjudicativa. Tampoco constituye un proceso de naturaleza reglamentaria. Como nos afirman las agencias peticionarias, la participación del público general en todo este proceso, normalmente, consiste en comentar y proveer la información

necesaria para que en la acción o decisión examinada se tomen en consideración sus consecuencias ambientales significativas.

Ahora bien, la Ley Orgánica de la Junta de Calidad Ambiental contiene disposiciones específicas que regulan la realización de vistas públicas en esa agencia. Según el artículo 14 de la ley, las vistas públicas pueden ser realizadas por la Junta "motu proprio o a solicitud de parte interesada en **relación con cualquiera de los asuntos relacionados con la [implantación de la Ley Sobre Política Pública Ambiental]**". 12 L.P.R.A. sec. 1134 (énfasis suplido). Más adelante la ley enumera varios requisitos procesales que deben ser satisfechos.

Evidentemente, la consideración de una declaración de impacto ambiental viabiliza la implantación de la política pública de dicha ley. En vista de ello, es forzoso concluir que los requisitos estatutarios de naturaleza procesal aplicables a las vistas públicas que contiene la Ley Orgánica de la Junta de Calidad Ambiental se extienden a los procesos de evaluación de declaraciones de impacto ambiental. <u>Véase además</u>, "Reglas de Procedimiento de Vistas Administrativas de la Junta de Claidad Ambiental de Puerto Rico" (1988). De este modo, las disposiciones en torno a notificación, resolución de controversias y revisión judicial, entre otras, tienen el mismo alcance y vigor en todas las vistas públicas que realiza la Junta, independientemente de su objetivo. Su cumplimiento, en consecuencia, no queda a su arbitrio. Por lo tanto, cuando, durante la celebración de una vista pública en la que se considera una declaración de impacto ambiental, se presenta ante la Junta un asunto que requiera ser adjudicado por no ser un mero comentario, conforme al mandato de su ley orgánica, la Junta tiene que resolverlo y notificar su determinación a las partes interesadas.

En este contexto, la solicitud de los recurridos para que se preparara una nueva DIA no fue un mero comentario. Constituyó una solicitud formal a la Junta dentro del proceso de evaluación de la declaración de impacto ambiental que, por su naturaleza, requiere que sea resuelta mediante resolución. Ante estas circunstancias, la JCA tenía que

cumplir con el artículo 14 de su ley orgánica, el cual establece, en la parte pertinente, lo siguiente:

> La Junta celebrará vistas públicas, motu proprio o a solicitud de parte interesada en relación con cualquiera de los asuntos relacionados con la implementación de ... [esta ley – la Ley sobre Política Pública Ambiental –]....
>
> . . . .
>
> (c) La Junta dictará la resolución pertinente o emitirá su decisión dentro de un término razonable después de la celebración de la vista, que no será mayor de sesenta (60) días <u>y notificará con copia a cada una de las partes interesadas. La notificación de la resolución o decisión de la Junta se efectuará por correo certificado y contendrá una certificación del Secretario de la Junta.</u>

12 L.P.R.A. § 1134 (1997) (énfasis suplido).

Al día de hoy, la JCA nunca ha notificado una resolución o decisión respecto a la controversia ante su consideración. Las cartas que la JCA le envió a la ACT no satisfacen los requisitos de notificación exigidos por la disposición antes transcrita.

Por otro lado, las vistas públicas que son realizadas por la Junta de Calidad Ambiental en los procesos de elaboración de una declaración de impacto ambiental se rigen no sólo por la Ley Orgánica de la Junta, 12 L.P.R.A. § 1134 (1997), sino también por el Reglamento sobre DIA´s. Ambos cuerpos establecen los aspectos procesales que deben ser cumplidos. En específico, la Sección 7.1 del Reglamento dispone que, la Junta de Calidad Ambiental "podrá celebrar vistas públicas sobre todo asunto o acción relacionado con [el Reglamento] cuando así lo considere necesario". Esto incluye los procedimientos de elaboración de una declaración de impacto ambiental. Por su parte, la sección 7.3 del Reglamento dispone, que la Junta:

> [d]eberá notificar[...] al público la fecha, hora, lugar y el propósito de la vista a celebrarse, conforme a los requisitos contenidos en la Sección 6.1 de este Reglamento. Esta notificación deberá publicarse en dos periódicos por lo menos treinta (30) días calendario antes de la fecha en que habrá de celebrarse la vista pública. **Dicha notificación interrumpirá todo trámite o término provisto en este Reglamento hasta tanto finalice el proceso de vistas públicas mediante Resolución correspondiente de la Junta.** (énfasis suplido).

De conformidad con lo anterior, la notificación de que serán realizadas vistas públicas interrumpe todo trámite o término relacionado al proceso de evaluación de la declaración de impacto ambiental hasta tanto la Junta de Calidad Ambiental emita una resolución en la que dé por finalizada esa etapa. De este modo, una vez iniciado el proceso de vistas públicas en torno a una declaración de impacto ambiental la Junta está impedida de tomar acción alguna relacionada a la misma hasta tanto no emita una resolución dando por terminado el proceso de vistas públicas según lo contemplado en la precitada disposición reglamentaria.

En el presente caso, surge del expediente administrativo que luego de las vistas públicas celebradas en las cuales se consideró la declaración de impacto ambiental preliminar, la JCA emitió una resolución en la cual aprobó el Informe del Panel Examinador. La misma, además, fue notificada a las partes, **incluyendo a los miembros de la comunidad que se oponen al proyecto**. <u>Véase</u>, Resolución y Notificación de 13 de mayo de 1993, en la pág. 2; Apéndice, en la pág. 1094. Esta resolución dio por finalizado la etapa de consideración de la declaración de impacto ambiental preliminar.

Luego de ello, ante la elaboración del suplemento a la declaración de impacto ambiental preliminar, se realizaron nuevas vistas públicas en las cuales, entre otras cosas, se discutió la solicitud de los recurridos. Estas nuevas vistas públicas fueron notificadas al público de conformidad con la sección 6.1 del Reglamento sobre Declaraciones de Impacto Ambiental, que requiere, entre otras cosas, la publicación de un aviso en dos (2) periódicos de circulación general en Puerto Rico. <u>Véase</u>, Apéndice de la Petición de Certiorari de la Autoridad de Carreteras y Transportación, en la pág. 16. Con ello, se abrió una nueva etapa de vistas públicas, que conforme al reglamento, interrumpió "todo trámite o término provisto en [el Reglamento sobre Declaraciones de Impacto Ambienta] **<u>hasta tanto finalice [...] mediante Resolución correspondiente de la Junta</u>**".

En el expediente administrativo no consta resolución alguna de la JCA que dé por finalizado esta nueva etapa de vistas públicas en dicha entidad. Como señalamos antes, las cartas remitidas por el Presidente de la JCA al Dr. Carlos Pesquera el 29 de enero de 1997 y al Dr. Carlos Colón de Armas, Subdirector Ejecutivo de la ACT el 15 de agosto del mismo año, no constituyen una resolución de la Junta para los propósitos del Reglamento, pues, conforme el artículo 15 de la Ley Orgánica de la JCA, las resoluciones de la Junta, entre otras cosas, deben ser notificadas por correo certificado a las partes interesadas y deben contener una certificación del Secretario de la Junta.[5]

La consecuencia jurídica de la ausencia de una resolución con este fin la prescribe el propio Reglamento: todos los trámites o términos relacionados a la consideración de la declaración de impacto ambiental prescritos por el reglamento sobre declaraciones de impacto ambiental de la JCA están interrumpidos. En vista de ello, es forzoso concluir, además, que no existe una declaración de impacto ambiental final, y por lo tanto, no existe una decisión administrativa de la cual recurrir ante el Tribunal de Circuito de Apelaciones. Asimismo, en virtud de que todos los trámites en torno a la declaración de impacto ambiental permanecen interrumpidos, la notificación a la ACT en la que se le expresó que la DIA-P cumplía con la Ley Sobre Política Pública Ambiental y se le autorizó a publicar un aviso sobre su disponibilidad, es inválida.

VI.

Hay que señalar, no obstante, que la ausencia de una DIA debidamente aprobada por la JCA, le impide la ACT iniciar la construcción del proyecto. La existencia de una DIA debidamente aprobada por la JCA es un requisito indispensable para iniciar cualquier acción que afecte significativamente el medio ambiente. Véanse, Ley sobre Política Pública Ambiental, art. 4(c), 12 L.P.R.A. § 1124(c) (1997); Misión Industrial de P.R., Inc. v. Junta de Planificación de P.R., op. de 30 de junio de 1998,

---

[5] 12 L.P.R.A. § 1134 (1997).

98 J.T.S. 79, en la pág. 1177; <u>Misión Industrial de P.R., Inc.</u> v. <u>Junta de Calidad Ambiental</u>, op. de 29 de junio de 1998, 98 J.T.S. 77, en la pág. 1103; <u>García Oyola</u> v. <u>Junta de Calidad Ambiental</u>, <u>supra</u>, en la pág. 663; <u>Salas Soler</u> v. <u>Srio. de Agricultura</u>, 102 D.P.R. 716, 720 (1974).

Ante esta circunstancia los recurridos no están faltos de remedio. Para hacer valer la obligación de la ACT en este caso tienen disponibles el recurso de mandamus, según establece el artículo 20 de la Ley sobre Política Pública Ambiental, 12 L.P.R.A. § 1139 (1997)[6], y el recurso de injunction.

Es preciso reiterar, por último, que al evaluar los reclamos presentados en torno al proyecto propuesto, "[n]o... pretende[mos] paralizar una obra, sino asegurar que se cumplan los requisitos estatutarios de estirpe constitucional, garantizar la conservación del ambiente y la salud de los ciudadanos afectados'". <u>García Oyola</u> v. <u>Junta de Calidad Ambiental</u>, <u>supra</u>, en la pág. 662.

Se dictará la sentencia correspondiente.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Wanda Colón Cortés y otros
    Recurridos

       v.

Junta de Calidad Ambiental
    Peticionaria

------------------------------

Wanda Colón Cortés y otros     CC-98-161      Certiorari
    Recurridos              CC-98-163

       v.

Autoridad de Carreteras y

---

[6] Respecto a este recurso, véase lo señalado en <u>Misión Industrial de P.R., Inc.</u> v. <u>Junta de Planificación de P.R.</u>, op. de 30 de junio de 1998, 98 J.T.S. 79, en las págs. 1177, 1189 n.70.

Transportación de Puerto Rico
      Peticionaria



SENTENCIA


En San Juan, Puerto Rico, a 2 de junio de 1999


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente sentencia, y habiendo sido expedido previamente el auto de certiorari en los casos consolidados del epígrafe, se revocan las resoluciones recurridas emitidas por el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, en el caso KLRA97 00670. En su lugar se ordena la desestimación del recurso de revisión judicial instado por Colón Cortés y otros contra la Junta de Calidad Ambiental y la Autoridad de Carreteras y Transportación de Puerto Rico.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Corrada del Río concurren sin opinión escrita. El Juez Asociado señor Negrón García se inhibió.



Isabel Llompart Zeno
Secretaria del Tribunal Supremo