Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EDNA RUTH DE LEÓN SERRANO Y BENIGNO VARGAS TROCHE<br><br>Apelada<br><br>v.<br><br>LUIS ROSARIO COLÓN, LUZ N. ORTIZ CRUZ y la Sociedad Legal de Bienes Gananciales compuesta por ambos<br><br>Apelante | TA2025AP00037 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Superior de Utuado<br><br>Sobre: Acción contradictoria de dominio<br><br>Caso núm.: UT2019CV00236 |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, el Juez Rivera Torres y el Juez Robles Adorno[1]

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

El 23 de junio de 2025, el señor Luis Rosario Colón, la señora Luz N. Ortiz Cruz y la Sociedad Legal de Bienes Gananciales compuesta por ambos (parte apelante) presentaron ante nos una *Apelación* en la que solicitaron que revoquemos la *Sentencia* emitida el 22 de mayo de 2025, notificada el 23 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI o foro primario).[2]

En el aludido dictamen, el foro primario resolvió que, la señora Edna Ruth De León Serrano y Benigno Vargas Troche (parte apelada) cumplieron con los requisitos jurisdiccionales para adquirir mediante prescripción adquisitiva extraordinaria, un predio. Asimismo, determinó que, la parte apelante no tenía que constituir una servidumbre de paso a favor de la parte apelada.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Romero García.
[2] Entrada Núm. 142 del caso UT2019CV00236 en el Sistema Unificado del Manejo de Casos (SUMAC).

Evaluada la prueba oral y por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de autos tiene su origen el 21 de mayo de 2019, cuando la parte apelada instó una *Demanda*[3] en la que alegó que, es dueña privativamente, y en proporción equivalente al cincuenta (50) por ciento de un bien inmueble el cual fue descrito de la siguiente forma:

> RUSTICA: Predio de terreno de forma irregular radicado en el Barrio Santa Bárbara, Sector Negrón, del término municipal de Jayuya, Puerto Rico, con una cabida superficial de MIL SETECIENTOS TREINTA Y OCHO punto OCHO MIL SEISCIENTOS CUARENTA Y SIETE METROS CUADRADOS (1738.8647 m/c); en lindes: por el NORTE, con Remanente de la finca principal de la cual se segrega; por el SUR, con propiedad de Rafael Ríos; por el ESTE, con propiedad de Liduvino Montero y por el OESTE, con camino municipal y Gustavo Ortiz.

La parte apelada arguyó que, en diciembre de 1983, el solar descrito le fue donado, mediante un contrato verbal, por el señor Moisés Orama Torres y la señora Carmen Leticia Negrón Marín. No obstante, la donación no fue elevada a escritura pública. Tiempo después, en el año 1986, la parte apelada construyó una estructura sobre el inmueble y dicha escritura fue descrita como:

> Estructura de una sola planta, construida en hormigón, dedicada a vivienda, que consiste en cuatro cuartos dormitorios, un baño, sala, cocina-comedor, pasillo y balcón.

Ahora bien, el solar donado forma parte de una finca de mayor cabida, la cual se describe como sigue:

> RÚSTICA: Predio de terreno radicado en el Barrio Jayuya Abajo del término municipal de Jayuya, Puerto Rico, marcado con el número Dos (2), del Plano de Inscripción, compuesto de 4,114.42996 metros cuadrados; en lindes: por el NORTE, con parcela # 62; por el SUR, con la parcela # 63; por el ESTE, con la parcela # 64 y por el OESTE, con camino municipal.

Adujo que, la propiedad construida fue adquirida a través de la Escritura #28, otorgada el 30 de marzo de 1989, ante el Notario Francisco A. Delgado Martínez. Ante ello, la parte apelada le solicitó

---

[3] Entrada Núm. 1 del caso UT2019CV00236 en el SUMAC.

a la parte apelante que segregara los límites de la propiedad donada. Así pues, la parte apelada indicó que llevó a cabo los trámites correspondientes para obtener los permisos de segregación. Sin embargo, argumentó que la parte apelante obstaculizó el procedimiento tras alegar que la propiedad le pertenece dado que es parte de la finca mayor. Consecuentemente, solicitó ante el TPI que ordenara la inscripción del terreno donado ante el Registro Inmobiliario, a favor de la parte apelada.

El 22 de julio de 2019, la parte apelante presentó una *Contestación a demanda* en la que negó, en su mayoría los planteamientos previamente alegados, y solicitó que el TPI declarase No Ha Lugar la *Demanda*.[4] Arguyó que, no procedía la *Demanda* debido a que la parte apelada carecía de poseer el inmueble dado que no podía cambiar su condición de precarista y, por tanto, no tenía capacidad de advenir como dueño.

Tras diversos incidentes procesales, el 6 de abril de 2021, la parte apelante instó una *Solicitud de autorización para enmendar contestación a demanda* en la que mantuvo, en su mayoría, las alegaciones planteadas en la *Contestación a demanda*.[5] No obstante, la parte apelante afirmó que estaba dispuesta a venderle a la parte apelada el terreno por la suma de $5.18 por metro cúbico. Además, solicitó que el foro primario le concediera un derecho de accesión y ordenara a la parte apelante el pago del costo del terreno.

Luego de varios trámites, la parte apelante radicó una *Moción en desestimación y archivo*, fundamentada en el testimonio del señor Moisés Orama durante una deposición, en la que argumentó que la donación no fue válida toda vez que, esta debió constar por escrito, para que fuese válida.[6] A esos fines, tras la parte apelada haber estado autorizada para construir en el terreno en cuestión, no

---

[4] Entrada Núm. 16 del caso UT2019CV00236 en el SUMAC.
[5] Entrada Núm. 31 del caso UT2019CV00236 en el SUMAC.
[6] Entrada Núm. 77 del caso UT2019CV00236 en el SUMAC.

significa que se ha poseído en concepto de dueño para fines de la prescripción extraordinaria. Por ende, el TPI debía desestimar la causa de acción instada en su contra debido a que la parte apelada no le fue donado el terreno.

El 8 de noviembre de 2023, el foro primario emitió una *Resolución* en la que declaró No Ha Lugar a la *Moción de desestimación y archivo* tras el señor Moisés Orama Torres admitir que donó el terreno en controversia, pero no elevó a escritura pública la donación debido a que el 4 de diciembre de 1986 obtuvo el título de la propiedad.[7] Sin embargo, el TPI resolvió que no se configurara una donación puesto que no se cumplieron con las solemnidades requeridas por el Código Civil, *infra*, para que se configure la donación. Por otro lado, el *foro a quo* razonó que, hubo un reconocimiento tácito del derecho de dueño por la parte apelada tras solicitarle a la parte apelante que llevara a cabo una segregación. Empero, resolvió que, aún no surgía del expediente si hubo o no una interrupción al término de treinta (30) años de prescripción adquisitiva. Por tanto, ordenó que continuaran los procedimientos del caso.

Luego, el 2 de febrero de 2024, fue celebrada la *Conferencia con antelación a juicio* en la que el TPI determinó que se podía utilizar, durante el juicio, un plano preparado por uno de los peritos.[8]

Tras diversos señalamientos, el 29 de octubre de 2024, inicio el juicio en su fondo en el que las partes presentaron la siguiente prueba testifical[9]:

Prueba testifical juramentada:
Ing. Edgardo Andrés Santiago Rodríguez

Prueba testifical juramentada y desfilada:
Benigno Rodríguez Burgos
Fabián González González
Jesús Vargas Pabón

---

[7] Entrada Núm. 97 del caso UT2019CV00236 en el SUMAC.
[8] Entrada Núm. 103 del caso UT2019CV00236 en el SUMAC.
[9] Entrada Núm. 121 del caso UT2019CV00236 en el SUMAC.

Edna Ruth de León Serrano

De igual manera, la parte apelada presentó la siguiente prueba admitida como evidencia:

Exhibit #1: Plano de Inscripción preparado por el Ingeniero Benigno Rodríguez Burgos (se hace constar la objeción de la parte demandada a que el plano sea considerado como auténtico)
Exhibit #2: Carta de autorización firmada por el Sr. Luis Rosario Colón con fecha del 14 de junio.
Exhibit #3: Resolución de ARPE con relación al Plano de Inscripción (se admite sujeto a lo que pueda surgir del contrainterrogatorio)
Exhibit #4: Informe de Campo (dos folios)

El 29 de octubre de 2024, la señora Edna Ruth De León testificó durante el juicio en la que sostuvo su reclamo de que lleva en el inmueble construido, más de treinta (30) años.[10]

Ese mismo día, continuó el desfile de la prueba en el que el señor Moisés Orama Torres testificó.[11]

Evaluada la prueba y luego de diversos asuntos procesales, el 22 de mayo de 2025, notificada el 23 de mayo de 2025, el foro primario emitió una *Sentencia* en la que formuló las siguientes determinaciones de hechos:

1. Benigno Vargas Troche y Edna Ruth de León Serrano convivían, ello para el año 1983, en el sector Santa Clara de Jayuya. La casa en la que vivían era alquilada y su situación económica era precaria. 2. Benigno Vargas Troche y Edna Ruth de León Serrano no están casados entre sí.
3. Benigno Vargas Troche, en el año 1983, trabajaba con Moisés Orama Torres.
4. Moisés Orama Torres, en el año 1983, y junto a su esposa, visitó a Benigno Vargas Troche y Edna Ruth de León Serrano, pues el primero deseaba ser padrino del hijo de estos últimos. Para esta fecha Benigno Vargas Troche y Edna Ruth de León Serrano vivían en el Barrio Santa Clara.
5. Durante esa visita, Moisés Orama Torres observó que la Parte Demandante residía en un lugar que le parecía peligroso, dado que se encontraba en la cercanía de un risco, y le expresó a la Parte Demandante que podía regalarle un pedazo de terreno, en específico a Benigno Vargas Troche.
6. Al día siguiente de la visita, Moisés Orama Torres fue al lugar donde se encontraba el terreno que deseaba regalarle a la parte co demandante Benigno Vargas Troche. Con el uso de maquinaria, abrió un acceso hacia el predio que actualmente ocupa la Parte Demandante e "hizo un llano". Además, le indicó a Benigno Vargas Troche que podía sembrar lo que quisieran en el predio y construir su casa.
7. Moisés Orama Torres, en el año 1983, de manera verbal, le expresó a Benigno Vargas Troche su deseo de donarle el predio de terreno al que se ha hecho referencia. Dicho predio

---

[10] Entrada Núm. 121 del caso UT2019CV00236 en el SUMAC.
[11] Entrada Núm. 122 del caso UT2019CV00236 en el SUMAC.

se encuentra en el Barrio Santa Bárbara, Sector Negrón, del término municipal de Jayuya, Puerto Rico.

8. A partir del año 1983, la Parte Demandante, con su propio peculio, comenzó a construir una vivienda en el terreno que le fue donado por Moisés Orama Torres. Esta construcción se terminó de realizar en el 1986 y consta de una estructura de una sola planta, construida en hormigón, dedicada a vivienda. Esta consiste en cuatro cuartos dormitorios, un baño, sala, cocina-comedor, pasillo y balcón. La Parte Demandante ha residido en dicha vivienda desde el año 1986.

9. La Parte Demandante, desde que ocupó el predio que le fue donado, realizó siembras en el mismo, entre otros frutos, de plátanos y guineos. Estas siembras eran para consumo propio de la Parte Demandante.

10. A la fecha en que Moisés Orama Torres le cedió el predio a Benigno Vargas Troche, el área estaba demarcada con verjas. Fue dentro de esta demarcación que la Parte Demandante construyó su residencia.

11. El predio que le fue cedido a Benigno Vargas Troche forma parte de la finca que a continuación se describe: RUSTICA: Predio de terreno radicado en el Barrio Jayuya Abajo del término municipal de Jayuya, Puerto Rico, marcado con el número Dos (2), del Plano de Inscripción, compuesto de 4,114.42996 metros cuadrados; en lindes: por el NORTE, con parcela # 62; por el SUR, con la parcela # 63; por el ESTE, con la parcela # 64 y por el OESTE, con camino municipal. Inscrita al folio 68, vuelto del tomo 109 de Jayuya, finca # 6,414.

12. La Parte Demandada adquirió la finca descrita en la determinación de hechos número 11 el 30 de marzo de 1989 mediante la Escritura Número 28 otorgada ante el Notario Francisco A. Delgado Martínez. El vendedor en dicha escritura lo fue Moisés Orama Torres.

13. A la fecha en que la Parte Demandada otorgó la Escritura Número 28 conocía que Moisés Orama Torres le había cedido el predio a la Parte Demandante.

14. A la fecha en que la Parte Demandada realizó la adquisición, la Parte Demandante llevaba poco más de 5 años ocupando el predio que le fue cedido por Moisés Orama Torres.

15. A la fecha en que la Parte Demandada realizó la adquisición ya estaba construida la residencia de la Parte Demandante en el predio que le fue cedido por Moisés Orama Torres.

16. A la fecha en que la Parte Demandada realizó la adquisición, el predio que le fue cedido a la Parte Demandante por Moisés Orama Torres estaba demarcado por una verja, claramente visible.

17. A la fecha en que la Parte Demandada realizó la adquisición, ya existía el camino que da acceso al predio que le fue cedido a la Parte Demandante por Moisés Orama Torres, ya que dicho camino se abrió en el 1983 y estuvo utilizándose continuamente por la Parte Demandante.

18. La Parte Demandada, luego de comprar la finca a Moisés Orama Torres, procedió a construir su vivienda en dicho predio.

19. En el mes de junio del año 2000, Edna Ruth de León Serrano se comunicó con el Ingeniero Benigno Rodríguez Burgos con el propósito de solicitar los servicios de este para realizar una mensura y gestionar un permiso de segregación de un predio en el municipio de Jayuya.

20. La Parte Demandada autorizó, por escrito, que se realizarán las gestiones ante la ARPE para obtener la autorización de la segregación. La autorización tiene fecha del 14 de junio de 2000 y le fue entregada al ingeniero

Benigno Rodríguez Burgos el 16 de junio del año 2000 en ocasión de la visita al campo para realizar la mensura.

21. La autorización firmada por la Parte Demandada lee como sigue Yo, Luis Rosario Colón, por la presente acredito ante esta honorable oficina y otras agencias gubernamentales, que he autorizado al agrimensor Benigno Rodríguez Burgos, licencia número 8569, a presentar y tramitar todos los documentos correspondientes al proyecto mencionado de epígrafe, así como también a representarme en todos los trámites administrativos correspondientes.

22. La parte superior de la autorización firmada por la Parte Demandada lee como sigue: "Segregación de un (1) lote Bo. Jayuya Abajo Sector Santa Barbara Carr PR 144 Km Jayuya, P.R."

23. El Ingeniero Benigno Rodríguez Burgos, el 16 de junio del año 2000, y con el propósito de cumplir la encomienda que la fuese dada por Edna Ruth de León Serrano se personó al área donde se encuentra el predio cuya mensura se prestaba a realizar. Estaban presentes Edna Ruth de León Serrano y la Parte Demandada. La presencia de estos era identificar los puntos que constituirían la demarcación física del predio a segregar.

24. La Parte Demandada le mostró al Ingeniero Benigno Rodríguez Burgos los puntos que constituirían la demarcación física del predio a segregar.

25. El ingeniero Benigno Rodríguez Burgos preparó un plano de inscripción para ser presentado ante la ARPE. Este es el único plano que fue preparado por el ingeniero Benigno Rodríguez Burgos.

26. Al 16 de junio del año 2000, fecha en que el Ingeniero Benigno Rodríguez Burgos fue al predio objeto del plano de inscripción, existía una verja que separaba lo que en el plano de inscripción se denomina como el "REMANENTE" del predio a ser segregado. El área denominada como "REMANENTE" queda al norte de la verja, y el predio segregado queda al sur de la verja. La verja discurre de este a oeste desde la colindancia con "LIDUVINA MONTERO" hasta casi llegar a la calle municipal al oeste. Dicha verja aún existe.

27. La verja que separa el área denominada como "REMANENTE" del predio ocupado por la Parte Demandante existía previo a que la Parte Demandada comprase su finca.

28. Al 16 de junio del año 2000, fecha en que el Ingeniero Benigno Rodríguez Burgos fue al predio objeto del plano de inscripción, existía una estructura de vivienda dentro del predio a ser segregado. Esta estructura aún existe y es la residencia permanente de la Parte Demandante.

29. Al 16 de junio del año 2000, fecha en que el Ingeniero Benigno Rodríguez Burgos fue al predio objeto del plano de inscripción, no existía evidencia visible de un acceso o camino entre el predio a ser segregado y la finca identificada como "REMANENTE" en el plano de inscripción.

30. El plano de segregación fue preparado conforme el predio que la Parte Demandante había estado ocupando desde el 1983.

31. La ARPE, mediante resolución de fecha 28 de junio del 2000, expedida en el caso 00L17- 00000-02988, autorizó la segregación del predio descrito gráficamente en el plano de inscripción. La resolución de ARPE aprobando la segregación no ha sido impugnada ni ha sido dejada sin efecto a la fecha de la presente sentencia.

32. El predio segregado se describe como sigue: RUSTICA: Predio de terreno de forma irregular radicado en el Barrio Santa Bárbara, Sector Negrón, del término municipal de Jayuya, Puerto Rico, con una cabida superficial de MIL SETECIENTOS TREINTA Y OCHO punto OCHO MIL SEISCIENTOS CUARENTA Y SIETE METROS CUADRADOS

(1738.8647 m/c); en lindes: por el NORTE, con Remanente de la finca principal de la cual se segrega; por el SUR, con propiedad de Rafael Ríos; por el ESTE, con propiedad de Liduvino Montero y por el OESTE, con camino municipal y Gustavo Ortiz.

33. El predio segregado tiene las siguientes colindancias: (a) al norte, con el remanente de la finca principal, (b) al sur, con Rafael Ríos, (c) al este, con Liduvina Montero y Cándido de León, y (d), al oeste con una carretera municipal.

34. A la fecha en que la Parte Demandante le fue donado el predio, y hasta el presente, la colindancia del predio segregado con las fincas al este, esto es aquellas pertenecientes a Liduvina Montero y Cándido de León, estaba demarcada con una verja.

35. A la fecha en que la Parte Demandante le fue cedido el predio, y hasta el presente, la colindancia del predio segregado con la finca al sur, esto es aquellas pertenecientes a Rafael Ríos, estaba demarcada con una verja.

36. A la fecha en que se preparó el plano de inscripción, y hasta el presente, la colindancia del predio segregado con la finca al sur, esto es, aquella perteneciente a Rafael Ríos, ha estado demarcada con una verja.

37. El camino de acceso que aparece en el plano de segregación coincide con el camino que se estableció en el año 1983 como el acceso al predio objeto del caso de epígrafe.

38. La Parte Demandada, en el año 1990, pudo ver el plano de inscripción preparado por el ingeniero Benigno Rodríguez Burgos. 39. Al 29 de octubre de 2024, el ingeniero Benigno Rodríguez Burgos no ha recibido solicitud alguna a los efectos de que se realice alguna modificación en el plano de inscripción.

40. En la única ocasión que el ingeniero Benigno Rodríguez Burgos conversó con la Parte Demandada sobre la segregación fue el 16 de junio del año 2000, esto es, la fecha en que realizó la visita de campo para realizar la mensura del predio.

41. El predio identificado como "Remanente" en el plano de inscripción, terreno en el cual ubica la residencia de la Parte Demandada, no es una finca enclavada, pues colinda y tiene un acceso directo a una carretera municipal, acceso que no discurre por el predio segregado que reclama como suyo la Parte Demandante. La Parte Demandada no utiliza el camino ubicado en el predio segregado para llegar a su finca.

42. La Parte Demandada, entre la fecha del 30 de marzo de 1989, esto es, el día que se otorgó la Escritura Número 28 mediante la cual adquirió el predio descrito en la determinación de hechos número 11 y el 22 de julio de 2019 no le realizó reclamo alguno a la Parte Demandante por la ocupación que estos hacían de la finca segregada.

43. La Parte Demandante ha estado ocupando el predio descrito en el plano de inscripción confeccionado por el ingeniero Benigno Rodríguez Burgos desde el año 1983 hasta el 22 de julio de 2019 ello de forma pública, pacífica y en concepto de dueño.

44. La Parte Demandante ha estado residiendo en el predio descrito en el plano de inscripción confeccionado por el ingeniero Benigno Rodríguez Burgos desde el año 1986, año en el que construyeron una vivienda en el predio le fue donado por Moisés Orama, hasta el 22 de julio de 2019, ello de forma pública, pacífica y en concepto de dueño.

El foro primario resolvió que, procedía declarar Ha Lugar la *Demanda* tras el señor Moisés Orama Torres testificar que, en efecto, le regaló al señor Beningno Vargas Troche el terreno y, a su vez, la

parte apelante tenía conocimiento de ello. El señor Moisés Orama Torres testificó que, su intención fue cederle el terreno en controversia a la parte apelada, con las demarcaciones actuales. Además, la parte apelante tenía conocimiento acerca de que el señor Moisés Orama Torres le concedió a la parte apelada el inmueble. Añadió que, la parte apelante observó cuando la parte apelada construyó la propiedad sobre el terreno en controversia. Pese a lo anterior, la parte apelante no realizó actos que demostraron su inconformidad con que la parte apelada estuviera poseyendo el inmueble. Asimismo, el TPI resolvió que la parte apelada cumplió con los requisitos jurídicos para adquirir la propiedad en calidad de dueño mediante la prescripción adquisitiva extraordinaria. Por tanto, la parte apelante no realizó actos que interrumpieran el término de la prescripción adquisitiva.

No obstante, el señor Moisés Orama Torres indicó que el camino que da acceso al predio del terreno no fue cedido por este a la parte apelada. Así pues, no procedía construir una servidumbre de paso a favor de la parte apelada. Ante este cuadro, el TPI no le dio credibilidad a lo alegado por la parte apelante, toda vez que, tenía pleno conocimiento acerca de que la parte apelante estaba poseyendo el terreno y construyó una estructura en este. Consecuentemente, el foro primario ordenó que el Registro Inmobiliaro Digital, Sección de Utuado, inscribiera la propiedad descrita en proporción equivalente al cincuenta (50) por ciento tras la parte apelada convertirse en dueña de la propiedad a través de la prescripción adquisitiva extraordinaria.

Inconforme, el 23 de junio de 2025, la parte apelante instó una *Apelación* en la que coaligó los siguientes señalamientos de error:

> Primer error: Erró el Tribunal al apreciar la prueba en todos sus aspectos y más que nada al eludir, o confundir los testimonios, partir y segmentar la admisión de testimonios o admitirlos en pedazos cuando no incluyó en su sentencia,

observación, determinación u opinión alguna respecto del testimonio de los testigos de los demandantes que alegadamente establecería la opinión de la comunidad o del público en violación a la conclusión número 4 conclusión que exige la sentencia en el caso de Dávila v. Córdova que lee como sigue:

> (4) cuya posesión ha mantenido el poseedor en concepto de dueño, de acuerdo con la creencia colectiva de la comunidad en que vive, no en virtud de la creencia propia que pueda tener el poseedor de ser el dueño del inmueble poseído.

Segundo error: Erró el tribunal al no reconocer la interrupción que de la prescripción extraordinaria se suscitó dado que en dos ocasiones diferentes hubo un reconocimiento implícito de que los demandantes no eran los dueños del terreno cuando solicitaron de los demandados autorización para la segregación de dicho predio para que mediante escritura se les adjudicara el mismo.

[...]

En atención a nuestra *Resolución*, el 19 de agosto de 2025, la parte apelante instó una Moción en la que presentó una Transcripción de la Prueba Oral (TPO).

El 10 de octubre de 2025, la parte apelante instó un Alegato suplementario.

Finalmente, el 11 de noviembre de 2025, la parte apelada radicó una *Contestación a Apelación*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

**II.**

**A.**

Es sabido que los tribunales apelativos actúan como foros revisores. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Este Tribunal de Apelaciones tiene como tarea principal aplicar el derecho a los hechos particulares de cada caso. *Íd.* Dicha función, está cimentada en que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado como ciertos ante la prueba que se haya ventilado. *Íd.* Como Tribunal de Apelaciones, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no

dirimimos la credibilidad y, tampoco esbozamos determinaciones de hechos. *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011).

Sin embargo, las conclusiones de derecho son revisables en su totalidad por el Tribunal de Apelaciones. *Íd.* Ante ello, los foros revisores no intervendrán con las determinaciones de hechos coaligadas por el Tribunal de Primera Instancia, la apreciación sobre credibilidad y valor probatorio de la prueba presentada en sala. *Dávila Nieves v. Meléndez Marín, supra,* pág. 771; *Hernández Maldonado v. Taco Maker, supra,* pág. 289.

Como excepción, en caso de que la actuación del juzgador de los hechos medió pasión, prejuicio, parcialidad o error manifiesto, este Tribunal de Apelaciones puede descartar las determinaciones de los hechos. *Pueblo v. Millán Pacheco,* 182 DPR 595, 642 (2011) *Miranda Cruz y otros v. S.L.G. Ritch,* 176 D.P.R. 951 (2009); *Soc. de Gananciales v. Centro Gráfico,* 144 D.P.R. 952 (1998). El Tribunal Supremo ha resuelto que, "si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas". *Álvarez v. Rivera,* 165 D.P.R. 1, 13 (2005); *Dávila Nieves v. Meléndez Marín, supra,* pág. 772, citando a: *Abudo Servera v. ATPR,* 105 DPR 728, 731 (1977). Ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra,* pág. 777.

**B.**

La prescripción adquisitiva o usucapión es un modo por el cual se pueden obtener los derechos sobre los bienes. Art. 1830 del

Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5241.[12]  Una vez transcurra el término estatutario para adquirir el dominio de un bien, se materializa el dominio en la persona, en unión a sus dueños anteriores, que han poseído durante ese periodo con los requisitos de ley. *Ex parte Reyes; Rodríguez, Opositora*, 68 D.P.R. 854 (1948); *Adm. Terrenos v. SLG Rivera Morales*, 187 DPR 15, 26-27 (2012). La prescripción adquisitiva tiene dos modalidades: la ordinaria y la extraordinaria. *Adm. Terrenos v. SLG Rivera Morales, supra*, pág. 27. La prescripción adquisitiva ordinaria es considerada cuando "se caracteriza por la necesidad de justo título y la buena fe del poseedor". J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales*, Madrid, Ed. Offirgraf, T. II, 1983, pág. 265. El concepto buena fe consiste en la creencia del poseedor de que la persona de quien recibió la cosa era su dueña y que podía transmitir su dominio. *Bravman, González v. Consejo Titulares*, 183 D.P.R. 827, 838 (2011). Con ello, el justo título es aquel legalmente suficiente para transferir el dominio o derecho real de cuya prescripción se trate. Art. 1852 del Código Civil, *supra* sec. 5273; *Adm. Terrenos v. SLG Rivera Morales, supra*, pág. 27. Por otro lado, la prescripción adquisitiva en su modalidad extraordinaria no tiene los requisitos de la prescripción ordinaria. *Adm. Terrenos v. SLG Rivera Morales, supra*, pág. 28. El Art. 1859 del Código Civil, *supra* sec. 5280 dispone que, "[p]rescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta (30) años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes." *Sucn. Maldonado v. Sucn. Maldonado*, 166 D.P.R. 154, 182 (2005). Ahora bien, en el caso *Adm. Terrenos v. SLG Rivera Morales, supra*, pág. 28; citando a *Dávila v. Córdova*, 77 D.P.R. 136, 150–151 (1954), se establecieron los

---

[12] Conforme el Art. 1806 del Código Civil de Puerto Rico, 31 LPRA sec. 11711, por los hechos acontecer durante la vigencia del derogado Código Civil, no le es de aplicación las disposiciones del Código Civil vigente.

siguientes requisitos jurisdiccionales para que se configure la prescripción extraordinaria:

> (1) una posesión continuada durante treinta años sobre el inmueble;
> (2) por haberla así tolerado el dueño del inmueble;
> (3) ya que el prescribiente ha entrado en posesión del inmueble sin autorización, permiso o licencia otorgados por el dueño o en virtud de contrato celebrado con el dueño;
> (4) cuya posesión ha mantenido el poseedor en concepto público de dueño, de acuerdo con la creencia colectiva de la comunidad en que vive, no en virtud de la creencia propia que pueda tener el poseedor de ser el dueño del inmueble poseído y
> (5) cuya posesión resulte además pública, pacífica y
> (6) sin que se haya interrumpido naturalmente, o sea, por abandono de la cosa por el poseedor, por más de un año, o civilmente, en virtud de diligencia judicial o notarial, o por un reconocimiento expreso o tácito del derecho del dueño hecho por el poseedor, antes de haber transcurrido los treinta años durante los cuales se consuma la prescripción, y
> (7) sin que el poseedor haya renunciado expresa o tácitamente a su título por prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria.

` Para que se configure la usucapión requiere que la posesión sea en concepto de dueño porque la posesión en concepto de dueño puede servir de título para adquirir el dominio. J. Puig Brutau, *Fundamentos de Derecho Civil,* 3ra ed., Barcelona, Ed. Bosch, 1989, T. III, Vol. 1, pág. 318. Un inmueble es poseído como dueño cuando la opinión pública o percepción general entiende que es el verdadero dueño, unido a los actos que el poseedor realiza con la propiedad, sin importar la creencia sobre el particular que este pueda tener. *Vélez Cordero v. Medina,* 99 D.P.R. 113, 119 (1970). El que posea con permiso, autorización o en representación de otro no podrá adquirir el dominio, ni ningún otro derecho por virtud de la prescripción ordinaria o extraordinaria. *Sánchez González v. Registrador,* 106 D.P.R. 361, 375 (1977); *Dávila v. Córdova, supra,* págs. 143–148.

En otros términos, la usucapión no es posible si se interrumpe el término mediante el cual se posee la cosa como dueño de forma pública y pacífica. *Adm. Terrenos v. SLG Rivera Morales, supra,* pág. 30. A esos efectos, se interrumpe la posesión civil cuando: (1) por la

citación judicial hecha al poseedor, aunque sea por mandato del tribunal o un juez incompetente; (2) mediante el requerimiento judicial o notarial, siempre que dentro de los dos meses de practicado se presente ante el tribunal o el juez la demanda sobre posesión o dominio de la cosa cuestionada, y (3) por el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véanse: Arts. 1845, 1847 y 1848 del Código Civil, *supra*. secs. 5266, 5268 y 5269.

Una vez se consuma la prescripción adquisitiva ordinaria, entonces, el usucapiente adquirirá el dominio de la cosa. *Adm. Terrenos v. SLG Rivera Morales*, *supra*, pág. 30.

**III.**

En el caso de marras, la parte apelante argumentó que, la parte apelada no poseyó, el terreno en controversia, en calidad de dueño, de forma pública, pacífica e ininterrumpidamente. A su vez, alegó que, la prescripción adquisitiva fue interrumpida, tras la parte apelada solicitar segregar el terreno, y, por tanto, no se cumplió el término estatutario requerido para que pudiera obtener el inmueble mediante la prescripción adquisitiva extraordinaria.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

Es sabido que, los tribunales revisores debemos brindar gran deferencia a las determinaciones de hechos que esboce el foro primario. Dicha deferencia se debe a que, el TPI fue el Tribunal que estuvo en mejor posición al momento de aquilatar la prueba presentada ante su consideración. Salvo cuando medió pasión, prejuicio, parcialidad o error manifiesto por parte del juzgador, entonces es que estamos autorizados a descartar las determinaciones de hechos y aplicar nuestro criterio ante la prueba desfilada en el TPI y ante nos.

Conforme a las normas jurídicas pormenorizadas, un modo de obtener la posesión de un bien inmueble es mediante la prescripción adquisitiva. La prescripción adquisitiva tiene dos modalidades: ordinaria y extraordinaria, dado que la controversia versa sobre la extraordinaria discutiremos la misma. En lo pertinente a la controversia, la prescripción adquisitiva extraordinaria se configura cuando una persona posee por un término de tiempo un bien inmueble y transcurrido el mismo, entonces, puede reclamar el bien. A esos fines, el poseedor debe cumplir con varios requisitos, entre ellos, que haya poseído en calidad de dueño de forma pacífica, pública e ininterrumpidamente, no haya sido interrumpido el término estatutario, poseyó en calidad de dueño, hubo un reconocimiento público de que era el dueño del bien, no mantuvo la posesión del bien por autorización del dueño y no fue interrumpida la prescripción adquisitiva. Una vez, el poseedor cumpla con los requisitos previamente contemplados, entonces este puede reclamar el bien como dueño. De lo contrario, si el poseedor no cumple con los requisitos, este no puede reclamar el bien como dueño.

Al respecto, luego de analizar detalladamente el expediente ante nuestra consideración, resolvemos que el TPI no incidió en los errores señalados.

En primer lugar, esta Curia examinó las determinaciones de hechos coaligadas por el TPI y resolvemos que el foro primario no manipuló ni alteró las determinaciones de hechos ni los testimonios de las partes en el pleito. Además, la actuación del juzgador en el foro primario no medió pasión, prejuicio, parcialidad o error manifiesto, por lo que, determinamos que las determinaciones de hechos fueron fundamentadas en la prueba desfilada ante su consideración.

En segundo lugar, surge de la prueba oral que, desde el año 1983 hasta la actualidad, la parte apelada lleva viviendo ininterrumpidamente y en calidad de dueño, en el terreno que le pertenecía a don Moisés Orama.[13] Asimismo, la parte apelada vive en la propiedad que construyó y los vecinos tenían conocimiento de ello.[14] De otro lado, la parte apelada llevaba cuarenta (40) años viviendo en dicha propiedad.[15] Desde el 1983, la parte apelada adquirió el terreno, puesto que el señor Moisés Orama le regaló a la parte apelada, de forma verbal, dicho terreno.[16] En el 1986, la parte apelada construyó una propiedad en el terreno que le proveyó el señor Moisés Orama.[17] Se desprendió que, la parte apelante adquirió el remanente del terreno en el año 1990.[18] Para el 2000, la parte apelada llevó a cabo los trámites para segregar la propiedad, pero no pudo debido a que la parte apelante le indicó que no podía, toda vez que, la totalidad de la propiedad estaba hipotecada.[19] Particularmente, el 16 de junio de 2000, un agrimensor llevo a cabo una segregación para demarcar la colindancia del terreno de estos, hasta el 2019, en la contestación a la demanda. [20] La parte apelante no había objetado la posesión de la parte apelada.[21]

Ciertamente, concurrimos con la determinación del foro primario, puesto que la parte apelada cumplió con los requisitos jurisprudenciales para adquirir por medio de la prescripción adquisitiva extraordinaria, el inmueble en cuestión. Según la prueba ante nos, en el año 1983, el señor Moisés Orama le "regaló" a la parte apelada un terreno para que lo destinara a su residencia. Esta Curia resuelve que, la parte apelada se comportó en calidad de

---

[13] Transcripción de la Prueba Oral (TPO), pág. 140, líneas 1-7.
[14] *Íd.*, pág. 144; líneas 9-10.
[15] *Íd.*, pág. 145; líneas 11-13.
[16] *Íd.*, pág. 172; líneas 9-14.
[17] *Íd.*, pág. 173; líneas 14-18.
[18] *Íd.*, pág. 175; líneas 10-11.
[19] *Íd.*, pág. 189; líneas 12-17.
[20] *Íd.*, pág. 18; líneas 20-22.
[21] *Íd.*, pág. 199; líneas 13-17.

dueño y poseyó de forma pacífica e ininterrumpidamente. Además, la parte apelada adquirió el terreno sin justo título y sin alguna autorización o permiso del dueño del terreno. Ello, pues ratificamos que el señor Moisés Orama le concedió a la parte apelada el inmueble evaluado en este recurso. Contrario a lo alegado por la parte apelante, el mero hecho de solicitar una segregación no conlleva una renuncia a la usucapión. Todo lo contrario, dicho acto afirma la actuación de la parte apelada de poseer la propiedad en calidad de dueño y, su deseo de que se inscribiera en su favor el inmueble. Asimismo, resolvemos que cabalmente la parte apelante cumplió con el plazo requerido para cumplir con el término para usucapir, toda vez que, se computa desde el momento en que inicio la posesión, lo cual es desde el **1983**. Consecuentemente, la parte apelada adquirió el terreno en cuestión mediante la prescripción adquisitiva extraordinaria.

Atisbamos que, no se desprende de la prueba oral y documental ante nos que, la parte apelante haya efectuado algún acto obstativo para invalidar la usucapión que la parte apelada estaba ejerciendo. Ello, dado a que la parte apelante tenía pleno conocimiento de que la parte apelada vivía en el inmueble descrito en el caso.

A la luz de los fundamentos esbozados, procederemos a confirmar el dictamen apelado en virtud de que la parte apelada cumplió cabalmente con los requisitos de prescripción adquisitiva extraordinaria.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Notifíquese.

La Jueza Lebrón Nieves concurre con el resultado sin escrito.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones